UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SUSAN HARDY<br>    Plaintiff, | CIVIL ACTION NO.: 2:21-cv-01591 |
| V. | JUDGE SUSIE MORGAN |
| SCANDINAVIAN AIRLINES SYSTEM<br>a/k/a SAS, d/b/a SCANDINAVIAN<br>AIRLINES OF NORTH AMERICA, INC.<br>    Defendants. | MAG. JUDGE DANA DOUGLAS |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION TO SET ASIDE DEFAULT &
## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant, Scandinavian Airlines System Denmark-Norway-Sweden ("SAS"), incorrectly named in Plaintiff's Complaint as "Scandinavian Airlines System a/k/a SAS, d/b/a Scandinavian Airlines of North America, Inc.," appearing in this matter for the sole purpose of filing this pleading, respectfully submits this Memorandum in Support of its Motion to Set Aside Default and Motion to Dismiss for Lack of Personal Jurisdiction.

## INTRODUCTION

This action arises from an alleged incident that occurred at the Oslo Gardermoen Airport in Oslo, Norway on August 23, 2019, during the deplaning of SAS Flight SK908, which originated in Newark International Airport in New Jersey. *See* Plaintiff's Complaint [R. Doc. 1] at ¶¶ 14-27. Plaintiff, Susan Hardy ("Plaintiff"), was a ticketed passenger on the flight and claims to have fallen and sustained physical injuries while attempting to disembark the aircraft, because the ground crew in Norway allegedly left "a gap of approximately 5 – 6 inches between the bottom of the aircraft door and the [passenger boarding bridge]." *See id.* at ¶ 22. Prior to boarding SAS Flight SK908, Plaintiff traveled to New Jersey from Louisiana onboard a United Airlines flight, and Plaintiff was

scheduled to return to Louisiana from New Jersey onboard a United Airlines flight. *See id.* at ¶ 11.

On August 20, 2021, Plaintiff filed suit in this Court asserting claims against SAS under the Montreal Convention.[1] *See id.* at ¶¶ 3, 9-10, 34. The Complaint lists SAS's North American subsidiary, Scandinavian Airlines of North America, Inc. ("SANA"), as an alias of SAS, but SANA is not independently named as a defendant in this action. *See generally id.* In her pleadings, Plaintiff appears to allege that this Court has personal jurisdiction over SAS pursuant to Article 33 of the Montreal Convention, which pertains to subject matter jurisdiction in the courts of State Parties to the Convention. *See id.* at ¶ 10.

As an attempt at effectuating formal service on SAS, Plaintiff's counsel mailed SAS's Head of Corporate Governance in Kastrup, Denmark a letter dated August 30, 2021, enclosing a summons that was attached to a copy of a complaint that related to another lawsuit. *See* **Exhibit A**, Declaration of Bartholomew J. Banino ("Banino Decl.") ¶ 5; **Exhibit B**, Correspondence and Documents Mailed by Plaintiff's Counsel on August 30, 2021. In early October 2021, after learning that these documents had been received by SAS in Denmark in late September, SAS's New York counsel informed Plaintiff's counsel about the incorrect complaint. *See* **Exhibit A**, Banino Decl. at ¶ 6; **Exhibit C**, Emails Dated October 6, 2021 (email in center of page). In the same communication, SAS's New York counsel also inquired as to whether Plaintiff intended to send SAS waiver of service forms pursuant to Fed. R. Civ. P. 4(d), since Plaintiff's counsel had

---

[1] Convention for the Unification of Certain Rules Relating to International Carriage by Air, concluded at Montreal, Canada, opened for signature on May 28, 1999, *reprinted in* S. Treaty Doc. 106-45, CCH Av. L. Rep. ¶ 27, 400-59, 1999 WL 33292734 (1999), *available at* https://www.icao.int/Meetings/AirCargoDevelopmentForum-Togo/Documents/9740.pdf (last visited Dec. 14, 2021).

asked about SAS's willingness to waive service before filing suit. *See* **Exhibit A**, Banino Decl. at ¶¶ 6, 8; **Exhibit C**; **Exhibit D**, Email Dated August 20, 2021.

On October 6, 2021, Plaintiff's counsel acknowledged his error in service, admitted that his office "made an embarrassing mistake," and promised to "resend the correct complaint immediately" along with waiver of service forms. *See* **Exhibit A**, Banino Decl. at ¶ 7; **Exhibit C**, Emails Dated October 6, 2021 (email at top of page). According to Plaintiff, the waiver of service forms and correct Complaint were mailed to SAS in Denmark on October 7, 2021. *See* Aff. of Tony B. Jobe in Supp. of Req. for Entry of Default [R. Doc. 7-1] at ¶ 6.

SAS returned the signed waiver of service form to Plaintiff on December 7, 2021, prior to the Clerk's entry of default. *See* **Exhibit A**, Banino Decl. at ¶ 9; **Exhibit E**.

## LAW & ARGUMENT

1. **THE CLERK'S ENTRY OF DEFAULT SHOULD BE SET ASIDE BECAUSE (i) SAS WAS NEVER PROPERLY SERVED UNDER THE HAGUE CONVENTION AND (ii) SAS PROVIDED PLAINTIFF'S COUNSEL AN EXECUTED WAIVER OF SERVICE ON DECEMBER 7, 2021.**

Fed. R. Civ. P. 55(a) provides for entry of default only where a party has failed to plead or otherwise defend a claim, and an entry of default must be set aside if service was improper. *See generally Aetna Business Credit, Inc. v. Universal Decor & Interior Design, Inc.,* 635 F.2d 434 (5th Cir. 1981). Here, Plaintiff is not entitled to default against SAS for two service-related reasons. First, SAS was never properly served under the Hague Convention and the Federal Rules. Second, SAS provided counsel for Plaintiff with an executed waiver of service form on December 7, 2021, two days before the Clerk's Entry of Default.

A. <u>Plaintiff has failed to effectuate proper service on SAS</u>.

Fed. R. Civ. P. 4(h)(2) dictates that service on a corporate defendant located outside of the United States is governed by Fed. R. Civ. P. 4(f). According to Fed. R. Civ. P. 4(f), a foreign corporation "may be served at a place not within any judicial district of the United States . . . by

any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the [Hague Service Convention]."

To the extent Plaintiff claims that her attorney's August 2021 mailing of a summons and complaint to SAS's Head of Corporate Governance in Denmark constitutes proper service under the Hague Convention, not only was Plaintiff's August 2021 attempt at formal service improper under Fed. R. Civ. P. 4(c) (by her counsel's own admission), but also it is questionable whether Danish law even authorizes service by mail. *See Commodity Futures Trading Comm'n v. Mikkelsen*, No. 20 Civ. 3833 (JPC), 2021 WL 4207050, at *3 (S.D.N.Y. Aug. 27, 2021) (noting murkiness of Danish law on the issue of service by mail (citing *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017) ("[I]n cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law."))).

Fed. R. Civ. P. 4(c)(1) dictates that a summons must be served along with a copy of the pertinent complaint. As noted above, in late August 2021, Plaintiff's counsel mailed SAS's Head of Corporate Governance a letter enclosing a summons that was attached to a copy of a complaint that ***related to another lawsuit***. *See* **Exhibit A**, Banino Decl. at ¶ 5; **Exhibit B**. Despite the fact that Plaintiff's counsel later mailed a copy of the correct Complaint to SAS in Denmark when he sent the waiver of service of summons (after counsel for SAS, as a sign of good faith, informed Plaintiff's counsel that the wrong complaint had been mailed to SAS), to date it is unclear whether Plaintiff ever made an attempt to effectuate formal service of the correct Complaint on SAS. **Exhibit A**, Banino Decl. at ¶ 10. Plaintiff's Request for Entry of Default makes no mention of such an attempt at formal service.

Plaintiff appears to contend that service upon the registered agent of SAS's subsidiary, SANA – a New York corporation headquartered in New Jersey (*id.* ¶ 4) – constitutes proper service on SAS. However, it is well-settled that "the mere fact of the existence of a parent-subsidiary corporate relationship does not subject a foreign corporation to domestic jurisdiction." *Henry v. Offshore Drilling (W. A.) Pty., Ltd.*, 331 F. Supp. 340, 341 (E.D. La. 1971) (recognizing this "well established rule"). Indeed, unless the forum state's law renders the subsidiary an "involuntary agent for service of process" on the foreign parent, service must be effectuated pursuant to the Hague Convention. *Blades v. Illinois Cent. R. Co.*, No. 02 Civ. 3121 (JCZ), 2003 WL 1193662, at *2 (E.D. La. Mar. 12, 2003) (noting that Louisiana law does not "transform" a domestic subsidiary into an involuntary agents for service of process on its foreign parent). Additionally, where, as here, "the plaintiff actually attempts to send the pleadings to a corporation in a foreign nation," the plaintiff "become[s] responsible for serving process under the mandates of the Hague Convention." *Rhodes v. J.P. Sauer & Sohn, Inc.*, 98 F. Supp. 2d 746, 749 (W.D. La. 2000); *see also Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 537 (5th Cir. 1990) (noting that the "transmittal of documents abroad is precisely the type of service that triggers the application of Hague Convention procedures").

In sum, Plaintiff has failed to properly serve SAS to date.

B.  <u>A default should not have been entered before the expiry of SAS's time to file an Answer under Fed. R. Civ. P. 4(d)(3).</u>

"The Court may set aside an entry of default for 'good cause.'" *LeSaicherre v. Zuppardo's Econ. Supermarkets, LLC*, No. 18 Civ. 9248 (SM), 2019 WL 2546882, at *1 (E.D. La. June 20, 2019) (Morgan, J.) (citing Fed. R. Civ. P. 55(c)). "In assessing 'good cause,' a district court should consider three non-exclusive factors: (1) whether the failure to answer was willful, (2) whether setting aside the default would prejudice the opposing party, and (3) whether the defaulted party

5

presents a meritorious defense." *Id.* (citation omitted). "All of these factors should be viewed against the background principles that cases should, if possible, be resolved on the merits and that defaults are generally disfavored." *Id.* (citation omitted).

Here, following Plaintiff counsel's transmission of the waiver of service of summons to SAS via FedEx on October 7, 2021, SAS had 60 days to return the waiver to SAS, under Fed. R. Civ. P. 4(d)(1)(F). After that 60-day period expired, SAS had 30 additional days to file its Answer. *See* Fed. R. Civ. P. 4(d)(3). SAS returned the waiver of service form to Plaintiff's counsel on December 7, 2021 (two days prior to the Clerk's entry of default), before SAS's time to file a responsive pleading has not yet expired. *See* **Exhibit A**, Banino Decl. at ¶ 9; **Exhibit E**. Given that SAS returned the waiver of service on December 7 and is entitled to 30 additional days to file its responsive pleading, there are no grounds for default at this juncture, and there were no grounds at the time of the entry of default.

Moreover, "[i]f a defendant . . . fails to sign a waiver, proper service must thereafter be effected." *Condalary v. Campbell*, No. 95 Civ. 664, 1995 WL 555581, at *2 (E.D. La. Sept. 18, 1995) (default set aside, since mailing of request for waiver of service did not constitute proper service). Accordingly, even if SAS had decided not to waive service, Plaintiff would not be entitled to an immediate default under the Federal Rules – rather, upon effectuating formal service, a plaintiff may seek to recover "the expenses incurred" in making such service. Fed. R. Civ. P. 4(d)(2).

Returning to the factors described in *LeSaicherre*, 2019 WL 2546882, at *1, "setting aside the default will not prejudice Plaintiff," as "[m]ere delay does not alone constitute prejudice." *Id.* at *1 (citation omitted). "Rather, the plaintiff must show that the delay will result in the loss of


6

evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Id.* Here, Plaintiff has made no such showing.

Finally, SAS has a meritorious affirmative defense to this action. As set forth below, this Court lacks personal jurisdiction over SAS, warranting dismissal of Plaintiff's claims in their entirety.

**2.    THE CLERK'S ENTRY OF DEFAULT SHOULD ALSO BE SET ASIDE, AND THE CLAIMS AGAINST SAS DISMISSED, BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER SAS.**

The Clerk's Entry of Default against SAS should also be set aside because Plaintiff is unable to establish that this Court has personal jurisdiction over SAS. For this reason, the Court should fully dismiss Plaintiff's claims against SAS under Fed. R. Civ. P. 12(b)(2).

A plaintiff seeking to invoke a Louisiana federal court's jurisdiction over a foreign defendant bears the initial burden of establishing a prima facie basis for the existence of personal jurisdiction over the defendant. *See Choice Healthcare, Inc. v. Kaiser Found. Health Plan*, 615 F.3d 364, 368 (5th Cir. 2010); *Ford v. Mentor Worldwide, LLC*, 2 F. Supp. 3d 898, 902 (E.D. La. 2014). Only after the plaintiff makes this *prima facie* showing in her pleadings does the burden of proof shift to the foreign defendant to demonstrate that personal jurisdiction is lacking. *Id.* In reviewing a plaintiff's jurisdictional allegations, the court "does not … extend the presumption of truth to mere conclusory allegations." *Guidry v. Janssen Pharms., Inc.*, 206 F. Supp. 3d 1187, 1195 (E.D. La. 2016); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (noting that "the prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted"). Dismissal is appropriate where the allegations of jurisdictional facts fail to state a basis for personal jurisdiction. *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 217 (5th Cir. 2000).

A federal court must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant: first, the forum state's long-arm statute must confer personal jurisdiction; second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment. *Tafaro v. Innovative Discovery, LLC*, 89 F. Supp. 3d 867, 869 (E.D. La. 2015). The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits. *Id.*

Constitutional due process requires that the defendant have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945) (citations omitted); *see also Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). The U.S. Supreme Court has created two analytical categories to determine whether the constitutional "minimum contacts" with the state have been shown – *i.e.*, "specific" jurisdiction and "general" jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citing *Int'l Shoe Co.*, 326 U.S. at 317).

As discussed below, Plaintiff's Complaint contains no coherent explanation for why Plaintiff believes that SAS – a consortium of corporations organized under the laws of Denmark, Norway, and Sweden, headquartered in Stockholm, Sweden (*see* **Exhibit A**, Banino Decl., at ¶ 3) – is subject to personal jurisdiction in the State of Louisiana as a result of an incident that allegedly occurred entirely in Oslo, Norway. *See generally* Complaint [R. Doc. 1]. Although the Complaint does contain a generalized reference to certain jurisdictional provisions in the Montreal Convention, as discussed below, federal courts have consistently interpreted those provisions as pertaining solely to subject matter jurisdiction in the courts of a particular country.

Ultimately, the Court lacks both general jurisdiction and specific jurisdiction over SAS and should therefore dismiss Plaintiff's claims.

A. The Court lacks specific jurisdiction over SAS because Plaintiff's claims are not based on any alleged actions or omissions occurring in the State of Louisiana.

As a general rule, federal courts may exercise specific jurisdiction over a foreign defendant when the alleged conduct that gives rise to the plaintiff's cause of action arises out of the defendant's contacts with the forum state. The United States Supreme Court clarified the framework for analyzing specific jurisdiction in *Walden v. Fiore*, 571 U.S. 277 (2014). In *Walden*, the Supreme Court explained that the specific jurisdiction minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. Thus, no consideration should be given to "the 'random, fortuitous, or attenuated' contacts [the defendant] makes by interacting with other persons affiliated with the [forum] State." *Id.* at 286. The relevant inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Id.* at 285 (internal quotation marks omitted). "[T]he relationship must arise out of contacts that the 'defendant **himself**' creates with the forum State." *Id.* at 284 (emphasis in original, quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Put simply, [no matter how] significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated'" (*Id.* at 285 (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980))), and the "mere fact that [defendant's] conduct affected [a] plaintiff[] with connections to the forum State does not suffice to authorize jurisdiction" (*Id.* at 291).

Here, SAS is a foreign corporation headquartered in Stockholm, Sweden. *See* **Exhibit A**, Banino Decl. at ¶ 3. Aside from claiming that (1) Plaintiff herself resides in Louisiana (*see* Plaintiff's Complaint [R. Doc. 1] at ¶ 1), (2) Plaintiff was scheduled to eventually travel back to Louisiana onboard a United Airlines flight, after traveling with SAS from Oslo to Newark (*see id.* at ¶ 11), and (3) SAS is a member of the "Star Alliance" and "partners" with United Airlines

"through a commercial agreement" (*id.*), Plaintiff does not allege that SAS has deliberately targeted Louisiana consumers or otherwise invoked the benefits and protections of Louisiana law in such a manner that give would rise to specific jurisdiction. *See Walden*, 571 U.S. at 286 (noting that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction").

Moreover, SAS's negligible alleged contacts with Louisiana also bear no connection to the purported negligence forming the basis of Plaintiff's claim. Indeed, all of SAS's alleged wrongful conduct took place in Norway: Plaintiffs alleges that after traveling from Louisiana to New Jersey onboard a United Airlines flight without incident (*see* Plaintiff's Complaint [R. Doc. 1] at ¶ 11) and traveling from New Jersey to Oslo onboard the SK908 without incident (*id.* at ¶¶ 11, 19), SAS employees at the Oslo Gardermoen Airport (1) negligently left "a gap of approximately 5 – 6 inches between the bottom of the aircraft door and the [passenger boarding bridge]" (*id.* at ¶ 22), (2) failed to "warn Mrs. Hardy of the dangerous condition of the exit way from the aircraft to the [passenger boarding bridge]" (*id.* at ¶ 24), and (3) failed to "offer[] nor provide[] . . . [Plaintiff] any assistance in navigating . . . out of the aircraft's door and down to the [passenger boarding bridge]" (*id.* at ¶ 25) – thus causing Plaintiff to fall during disembarkation of the SAS Flight SK908 (*id.* at ¶ 26). As such, Plaintiff has failed to "set forth a prima facie case as to the existence of contacts with Louisiana out of which [her] causes of action arose." *See Tafaro v. Innovative Discovery, LLC*, 89 F. Supp. 3d 867, 874 (E.D. La. 2015) (finding specific jurisdiction lacking where defendant's alleged wrongful acts "took place outside of Louisiana and did not in any way specifically target Louisiana"); *see also H.B. by Barakati v. China S. Airlines Co. Ltd.*, No. 20 Civ. 9106 (VEC), 2021 WL 2581151, at *5 (S.D.N.Y. June 23, 2021) (recognizing longstanding principle that a plaintiff's purchase of a ticket for air travel in a forum, for round-trip travel to and

from the forum, "is insufficient to endow a [forum] court with personal jurisdiction over a non-resident defendant, because the defendant's alleged negligence and the plaintiff's injury are too far removed from the business the defendant transacted in [the forum]"); *Bomberger v. American Airlines*, No. 17 Civ. 5298 (PBT), 2018 WL 3416386, at *2 (E.D. Pa. July 12, 2018) (no specific jurisdiction over case involving a slip and fall in an out-of-state airport); *Popli v. Air India Airline*, No. 17 Civ. 337 (PSD), 2017 WL 1826499, at *2 (E.D. Pa. May 5, 2017) (no specific jurisdiction where the dispute arose "from the airline's sale of contaminated food to Plaintiff in India"); *Banks v. American Airlines*, No. 19 Civ. 04026 (JSC), 2019 WL 5579479, at *4 (N.D. Cal. Oct. 29, 2019) (no specific jurisdiction where plaintiff's claims "[did] not arise out of [airline]'s [forum state]-related activities"); *Mali v. British Airways*, No. 17 Civ. 685 (KPF), 2018 WL 3329858, at *7 (S.D.N.Y. July 6, 2018) (same, where "majority of [plaintiff's] tort claims [arose] out of [d]efendant [airline]'s conduct in the Mumbai airport").

All told, the exercise of specific jurisdiction over SAS in this forum would be improper, given the tenuous connection between Plaintiff's claims and SAS's *de minimis* contacts with the State of Louisiana. Under *Walden*, the fact that Plaintiff happens to reside in Louisiana is irrelevant to the specific jurisdiction analysis.

    B.    <u>The Court also lacks general jurisdiction over SAS because SAS is not "at home" in Louisiana</u>.

In cases where specific jurisdiction is lacking, the plaintiff has the burden of establishing that the defendant is subject to the general jurisdiction of the court where the action was filed. Under the Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), this Court clearly does not have general personal jurisdiction over SAS. In *Daimler*, the Court instructed that the critical question in determining the existence of general jurisdiction is whether the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home

in the forum State." *See id.* at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Court further explained that a corporation is not "at home" in "every State in which [it] 'engages in a substantial, continuous, and systematic course of business.'" *Id.* at 137–38. In other words, the test is "not [simply] whether [the] corporation's in-forum contacts can be said to be in some sense 'continuous and systematic.'" *Id.* at 138–39 (citation omitted). Indeed, it is the exceptional case that "a corporation's operations in a forum **other than its formal place of incorporation or principal place of business** [are] so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19 (emphasis added). Following the Supreme Court's decision in *Daimler*, the Fifth Circuit has observed that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

Applied here, the Supreme Court's holding in *Daimler* dictates that this Court unquestionably lacks general jurisdiction over SAS. SAS is a consortium of corporations organized under the laws of Denmark, Norway, and Sweden. *See* **Exhibit A**, Banino Decl. at ¶ 3. It currently maintains its headquarters in Stockholm, Sweden. *See id.* Further, Plaintiff does not – and cannot – allege that SAS operates any flights into or out of Louisiana airports. Instead, the Complaint alleges only that "SAS conducts regularly-scheduled flight operations to and from airports in the United States, including New[ark] International Airport in the State of New Jersey, San Francisco International Airport in the State of California, Seattle-Tacoma International Airport in the State of Washington, and Washington Dulles International Airport in the District of Columbia." *See* Plaintiff's Complaint [R. Doc. 1] at ¶ 6.

Even if SAS did operate flights to and from Louisiana airports, it is well-settled that this would not be sufficient to confer general jurisdiction over SAS in this forum. *See, e.g.*, *Bomberger*, 2018 WL 3416386, at *2 (finding "[t]he mere fact that Defendant has planes that depart from, and land in, the forum state" insufficient to establish either specific or general jurisdiction); *see also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (general personal jurisdiction lacking where the defendant used its planes in the forum state); *H.B. by Barakati*, 2021 WL 2581151, at *5 (same, where defendant operated daily flights to and from the state).

In sum, there are no grounds for this Court to exercise general jurisdiction over SAS.

C. <u>The Montreal Convention does not provide this Court with personal jurisdiction over SAS</u>.

Plaintiff's Complaint suggests that Article 33(2) of the Montreal Convention confers personal jurisdiction over SAS. *See* Complaint [R. Doc. 1] at ¶ 10. However, it is well-established that Article 33(2) "affords subject matter [treaty] jurisdiction" in the courts of a particular country, "not personal jurisdiction" in a particular court. *See Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*, No. 16 Civ. 9791 (NRB), 2018 WL 1888483, at *3 (S.D.N.Y. Apr. 5, 2018) (collecting cases); *see also Pesa v. Scandinavian Airlines Sys.*, 2:19 Civ. 20415 (BRM) (JSA), 2021 WL 1660863, at *7 (D.N.J. Apr. 27, 2021) ("[T]he Montreal Convention does not provide personal jurisdiction."); *Davydov v. Scandinavian Airlines Sys.*, No. 19 Civ. 17628 (MCA), 2020 U.S. Dist. LEXIS 220818, *4 (D.N.J. Mar. 13, 2020) (same); *Sampson v. Delta Air Lines, Inc.*, No. 2:12 Civ. 244 (TS), 2013 WL 6409865, at *1 (D. Utah Dec. 9, 2013) (finding that, even after establishing the existence of subject matter jurisdiction in the United States, "the [c]ourt must address the propriety of exercising personal jurisdiction over a foreign defendant"); *Weinberg v. Grand Circle Travel, LCC*, 891 F. Supp. 2d 228, 237 (D. Mass. 2012) (same); *Tucker v. British Airways PLC*, 2:16 Civ. 00618 (RAJ), 2017 WL 6389302, at *3 (W.D. Wash. Dec. 14, 2017)

13

(same). Accordingly, Plaintiff's reliance on the Montreal Convention to establish personal jurisdiction over SAS is misplaced.

## CONCLUSION

For each of the foregoing reasons, SAS respectfully requests that the Court set aside the Clerk's Entry of Default and dismiss Plaintiff's claims against SAS based on the absence of personal jurisdiction over SAS in this forum.

Respectfully submitted,

*/s/ Bradley J. Schwab*
BRENDAN P. DOHERTY (No. 28556)
BRADLEY J. SCHWAB (No. 35312)
GIEGER, LABORDE & LAPEROUSE, LLC
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
Email: bdoherty@glllaw.com
bschwab@glllaw.com

ATTORNEYS FOR SCANDINAVIAN
AIRLINES SYSTEM

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded to all counsel of record via the Court's electronic case management system on December 14, 2021.

*/s/ Bradley J. Schwab*
BRADLEY J. SCHWAB