UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SUSAN HARDY | * | CIVIL ACTION |
| VERSUS | * | NO. 21-1591 |
| SCANDINAVIAN AIRLINES SYSTEMS | * | SECTION "E" (2) |

**ORDER AND REASONS**

Before me is Plaintiff Susan Hardy's Motion for Protective Order and to Quash Non-Party Subpoenas. ECF No. 71. Defendant Scandinavian Airlines Systems ("SAS") d/b/a Scandinavian Airlines of North America, Inc. filed a timely Opposition Memorandum, and Plaintiff filed a timely Reply. ECF Nos. 72, 73. No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Plaintiff's Motion for Protective Order and to Quash Non-Party Subpoenas is GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

**I.   BACKGROUND**

Plaintiff filed suit against SAS for injuries sustained on August 23, 2019, while disembarking from SAS Flight SK908 in Oslo, Norway, alleging Defendant failed to position the passenger boarding bridge in accordance with industry standards (the "Incident"). ECF No. 25 ¶¶ 22-33, 37-38. Plaintiff's Initial Disclosures identified Dr. James Barbee as "having knowledge of the psychiatric impact" of her injuries and listed other treating physicians and a physical therapist at Ochsner Health Center as having knowledge of her injuries and treatment. ECF No. 72-1 at 3. Plaintiff also produced a life care plan (the "Plan") from Dr. Aaron Wolfson, which report is based in part on records from Ochsner Medical Center and Dr. Barbee. ECF 72-2. The

1

Plan notes some pre-Incident conditions and injuries but provides no details on them nor records related to same, and Plaintiff did not produce any pre-Incident records from Ochsner Medical Center or Dr. Barbee.  ECF No. 72 at 2.

On December 6, 2024, SAS issued subpoena duces tecum to Dr. Wolfson, Dr. Barbee, and relevant Ochsner Medical Centers.  ECF No. 72-3.[1]  On December 12th, Plaintiff notified SAS that it failed to provide notice of the subpoenas before service (and thus issued same in violation of Rule 45(a)(4)) and requested they be withdrawn.  ECF No. 71 at 15, 17-21.

II.     **THE PENDING MOTION**

When SAS failed to withdraw the subpoenas, Plaintiff filed this motion to quash and for protective order to require SAS to return produced documents.  ECF No. 71-1 at 1, 3.  She argues she has standing to challenge the subpoenas because she has a personal interest in the subpoenaed matter (her medical records) and maintains legal control over them pursuant to the Health Insurance Portability and Accountability Act ("HIPAA").  *Id.* at 3-4.

Plaintiff argues that the subpoenas were on an outdated form and violated Rules 45(a)(3) and (a)(4) because they were not signed by the issuing attorney and she did not receive prior notice before service.  *Id.* at 4-5.  She also argues the Ochsner subpoenas should be quashed because medical care before August 23, 2019, is irrelevant as SAS is strictly liable to her for injuries upon proving an "accident" under the governing international convention, and she already disclosed the relevant medical records.  *Id.* at 1-2, 5-6.  Plaintiff argues that the psychotherapist privilege

---

[1] From Dr. Wolfson, SAS seeks his complete file regarding the Plan and all medical records and/or assessments reviewed in rendering thereof. ECF No. 72-3 at 7. From the Ochsner Medical Centers, SAS seeks a complete copy of all of Plaintiff's medical records pertaining to care and treatment from 2016 to present. *Id.* at 10, 13. From Dr. Barbee, SAS seeks a copy of all of Plaintiff's medical records pertaining to care and treatment. *Id.* at 3. It also seeks from him all assessments, comprehensive inventories, administered tests and results, and comprehensive treatment plan reports/recommendations regarding Plaintiff; all comparisons/scales, data, theories, information regarding diagnostic tools used to evaluate Plaintiff;  and all reports of findings regarding interviews and/or evaluations of Plaintiff.  *Id.* at 3-4.  The doctor subpoenas were served on December 11th, and the Ochsner subpoenas were served on December 12th (New Orleans) and December 13th (Slidell).  *Id.* at 2, 6, 9, 12.

2

requires the subpoena to Dr. Barbee be quashed; the subpoena is overbroad due to the absence of any time restriction; the requests seek irrelevant information; and she has already disclosed the relevant medical records. *Id.* at 6-7. As to Ochsner and Dr. Barbee, she argues that SAS failed to comply with 45 C.F.R. § 164.512(e). *Id.* at 7-9. Regarding Dr. Wolfson, Plaintiff argues that subpoena should be quashed because it is addressed to Ochsner (Slidell) despite Dr. Wolfson not being an employee of thereof, and it seeks protected work-product communications between Plaintiff's counsel and the doctor regarding Plaintiff. *Id.* at 9-10.

In Opposition, SAS argues Plaintiff failed to comply with Rule 37(a)(1)'s meet-and-confer requirements, and it has cured any technical deficiencies by re-issuing the subpoenas on the current form, with counsel's signature, on January 3, 2025. ECF No. 72 at 6-7; *see also* ECF No. 72-4. SAS also argues that Plaintiff waived any medical or psychotherapist privilege by making her medical condition and mental status an issue in her Complaint and Initial Disclosures. ECF No. 72 at 8-9. SAS also argues that damages under the convention are limited to those resulting from the accident, and thus, records of prior injuries are relevant to its defense of pre-existing injuries. *Id.* at 9-10; *see also* ECF No. 65 at 5 (SAS's fifth affirmative defense). SAS argues that Dr. Barbee's documents are relevant, and Plaintiff's selective, voluntary production of post-Incident medical records from the Ochsner Medical Centers and Dr. Barbee is not a basis for quashing its subpoenas that seek pre-Incident records. *Id.* at 10-11. SAS argues it properly addressed Dr. Wolfson's subpoena, and the documents are required disclosures of a testifying expert and not protected by HIPAA or the work-product protection. *Id.* at 11-12.

In Reply, Plaintiff argues that any information from Ochsner Medical Centers and Dr. Barbee be limited to that from August 22, 2019, to the present. ECF No. 73 at 10. She argues the

3

December 6th subpoenas to the doctors were not personally served,[2] in violation of Rule 45(b)(1), and she only waived her HIPAA privilege as to medical records related to the injuries caused by the Incident and not unrelated records. *Id.* at 3-6. Plaintiff asserts that SAS is applying an outdated relevance standard and reiterates her argument that it is strictly liable for her injuries once she shows it caused the accident. *Id.* at 7-8. Plaintiff also contends that she complied with Rule 37(a)(1). *Id.* at 8-9.

## III.    APPLICABLE LAW

### A. Requirements for a Non-Party Subpoena Duces Tecum and Its Service

Discovery may be obtained from non-parties pursuant to Rule 45 of the Federal Rules of Civil Procedure. A party may command a non-party to produce materials, specifically "documents, electronically stored information, or tangible things" in the non-party's possession, custody, or control. FED. R. CIV. P. 45(a)(1)(A)(iii). An attorney may issue a subpoena from the court where the action is pending if authorized to practice in it, and that attorney must sign the subpoena. *Id.* at 45(a)(2)-(3).

Proper service of a subpoena duces tecum is made by a non-party at least eighteen years old delivering a copy thereof to the named person. *Id.* at 45(b)(1). When the named person is a natural person, personal service is required,[3] but when an entity is named, service must be effected

---

[2] ECF No. 72-3 at 1-2, 5-6.

[3] *See In re Dennis*, 330 F.3d 696, 704 (5th Cir. 2003) ("[T]he rule indicates that proper service requires . . . personal delivery of the subpoena . . . ."); *Weiss v. Allstate Ins. Co.*, 512 F. Supp. 2d 463, 466 (E.D. La. 2007) (Vance, J.) ("[S]ervice is improper if the person himself is not served with a copy of the subpoena"); *Scottsdale Ins. Co. v. Educ. Mgmt., Inc.*, No. 04-1053, 2007 WL 2127798, at *3 (E.D. La. July 25, 2007) (citing CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE CIVIL § 2454 (2d ed. 1995) and cases cited therein) ("A majority of courts in various jurisdictions require personal service of a subpoena and will not allow the alternate forms of service."); *see also Accurso v. Cooper Power Sys., Inc.*, No. 06-848, 2008 WL 2510140, at *4–5 (W.D.N.Y. June 19, 2008) (holding that Rule 45's requirement of "delivering" means personal service because "the subpoena extends the Court's jurisdiction over an unwilling non-party and there must be assurance that this nonparty actual[ly] receives this Court process"); *Fed. Trade Comm'n v. Compagnie de Saint-Gobian-Pont-a-Mousson*, 636 F.2d 1300, 1312–13 (D.C. Cir. 1980) (distinguishing Rule 4 service by mail as effectuating notice from Rule 45 service as compulsion and noting that "compulsory process may be served upon an unwilling witness only in person").

upon the entity's registered agent and not by delivery to the entity's address or mailroom.[4] When necessary, proof of service of the subpoena is also required; the subpoenaing party must file in the court a statement, certified by the server, showing the date and manner of service and the names of the persons served. FED. R. CIV. P. 45(b)(4). Before serving a subpoena duces tecum on its respondent, the subpoenaing party must serve a notice and copy of the subpoena on each other party. *Id.* at 45(a)(4).

### B. Quashing/Modifying of a Subpoena and Standing

On timely motion, a court must quash or modify a subpoena if it: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographic limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protective matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." *Id.* at 45(d)(3)(A). Generally, modification of a subpoena is preferable to quashing it outright.[5]

However, the movant must first have standing to challenge the subpoena, meaning the movant must: (1) be in possession or control of the requested material; (2) be the person to whom the subpoena is issued; or (3) have a personal right or privilege in the subject matter of the subpoena.[6] A party cannot challenge a Rule 45 subpoena directed to a non-party on the basis that

---

[4] *Reese v. Great W. Cas. Co.*, No. 18-8336, 2019 WL 4930233, at *4 (E.D. La. Oct. 7, 2019) (noting that a corporation must generally be served by personal service on its agent for service of process and finding service on receptionist insufficient); *see also* FED. R. CIV. P. 4(h).

[5] *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (citations omitted).

[6] *Black v. DMNO, LLC*, No. 16-2708, 2018 WL 488991, at *2 (E.D. La. Jan. 19, 2018) (citing *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Johnson v. Mixon*, No. 13-2629, 2014 WL 1764750, at *4 (E.D. La. May 2, 2014)); *Bounds v. Cap. Area Fam. Violence Intervention Ctr., Inc.*, 314 F.R.D. 214, 218 (M.D. La. 2016) (citation omitted) ("Parties have limited standing to quash subpoenas served on non-parties pursuant to Rule 45."); *see also Weatherly v. State Farm Fire & Cas. Ins. Co.*, No. 07-4371, 2009 WL 1507353, at *2 (E.D. La. May 28, 2009) (holding that defendant did not have standing to challenge the subpoena where it had no privilege over the documents); *Guzman v. Latin Am. Ent., LLC*, No. 13-41, 2014 WL 12599345, at *1 (S.D. Tex. July 2, 2014) (citing *U.S. Bank Nat'l Ass'n v. James*, 264 F.R.D. 17, 18–19 (D. Maine 2010) ("The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought.")); *Frazier v. RadioShack Corp.*, No. 10-855, 2012 WL 832285, at *1 (M.D. La. Mar. 12, 2012) (citations omitted) ("As an initial matter, it should be noted that a plaintiff cannot challenge a Rule 45 subpoena directed to a third party on the basis that it violates another person's privacy rights . . . that the subpoena is overly broad, or that the subpoena seeks

the subpoena is overly broad or seeks irrelevant information because only the respondent can object and seek to quash a Rule 45 subpoena on those grounds.[7] Likewise, a party cannot challenge a subpoena issued to a non-party based on technical violations, such as improper service.[8]

Regardless of whether a party has standing under Rule 45 to challenge a non-party subpoena, the party does have standing to seek a protective order under Rule 26(c).[9] A party may not, however, use a Rule 26(c) motion to enforce, on a non-party's behalf, Rule 45(c)'s geographical limits or compliance time requirements. These non-party-specific protections go beyond, and are separate from, the scope of discovery issues that fall within the parameters of a Rule 26(c)(1) protective order.[10]

C. **Standard for Protective Order**

Under Rule 26, a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). "Good cause" exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order.[11] In determining good cause, the court must balance the risk of injury without the protective order and the requesting party's need for information.[12] The

---

information that is irrelevant because only the responding third party can object and seek to quash a Rule 45 subpoena on those grounds.").
[7] *Salmon v. Waffle House, Inc.*, No. 19-1349, 2020 WL 6708382, at *2 (E.D. La. Nov. 16, 2020) (citing *Frazier*, 2012 WL 832285, at *1).
[8] *Robinson v. Mitchell Int'l, Inc.*, No. 14-24, 2015 WL 3868559, at *1 n.1 (M.D. La. June 23, 2015) (citing *Brown*, 595 F.2d at 967; *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997)) ("[S]tanding to challenge a Rule 45 subpoena based on improper service lies with the person subject to the subpoena."); *Ireh v. Nassau Univ. Med. Ctr.*, No. 08-470, 2008 WL 11322922, at *2 (N.D. Ga. Mar. 4, 2008) (citing cases) ("Plaintiff['s] . . . attack on the subpoena issued to [non-party], to the extent based on its form, issuance, service, and response requirements, exceeds the scope of his standing to bring a motion to quash.").
[9] *Bounds*, 314 F.R.D. at 218 (citing *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240 n.2 (E.D. Va. 2012); *Auto–Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005); *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005)) ("Nevertheless, a party has standing to move for a protective order pursuant to Rule 26(c) seeking to limit the scope of discovery, even if the party does not have standing pursuant to Rule 45(d) to bring a motion to quash a third-party subpoena.").
[10] *See Jim S. Adler, P.C. v. McNeil Consultants, LLC*, No. 19-2025, 2022 WL 1624785, at *1–2 (N.D. Tex. May 23, 2022) (citations omitted).
[11] *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (citation and quotation omitted).
[12] *Blanchard & Co., Inc. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, at *5 (E.D. La. Apr. 5, 2004).

party seeking the protective order bears the burden of showing that a protective order is necessary, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."[13]

Rule 26 offers a variety of potential options that the court may use to protect the moving party, including forbidding or limiting the scope of discovery into certain matters. FED. R. CIV. P. 26(c)(1)(D). A district court may exercise its sound discretion in determining how far to restrict discovery, and in particular, the decision whether to grant or deny a request for a protective order is entrusted to the district court's sound discretion.[14] The trial court enjoys wide discretion in setting the parameters of a protective order.[15]

Relevance of the material sought by a non-party subpoena may be challenged.[16] Relevance is measured by Rule 26(b)(1),[17] which provides:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Information is relevant if it bears on, or reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party.[18] If relevance is in doubt, a court should allow discovery.[19]

---

[13] *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (citing *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978))).
[14] *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 n.27 (5th Cir. 1999) (citation omitted).
[15] *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.").
[16] *Bounds*, 314 F.R.D. at 219 ("[Defendants] has standing pursuant to Rule 26(c)(1) to seek a limitation and/or modification of the scope of the [non-party] subpoena.").
[17] *Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022); *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017) (Morgan, J.).
[18] *Leonard*, 38 F.4th at 489 (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991)).
[19] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987)).

D. **Discovery of Medical Records**

While a party's personal interest in her medical records provides standing to challenge a non-party subpoena for those records, the privilege protecting medical records from discovery is waived when the party places her medical condition at issue.[20] Waiver is the consequence when a party puts at issue both her physical and *mental* conditions, thus when the latter is placed at issue, the psychotherapist-patient privilege is waived.[21] Many courts have found a party places their physical or medical condition at issue by seeking damages related to same.[22] Basic fairness requires the other party be allowed "to explore the truth of the [party's] allegations that he/she suffered physical or emotional distress as a result of the [other party's] conduct and to determine whether the [party] suffered any pre-existing physical or emotional distress" that may be the (or an) actual cause of the distress.[23] And when pre-existing conditions are raised in defense of a

---

[20] *Tanner v. BD LaPlace, LLC*, No. 17-5141, 2018 WL 3528023, at *2 (E.D. La. July 3, 2018) (citations omitted) (Feldman, J.) (recognizing that privilege may be waived when a party places his medical condition at issue); *Stogner v. Sturdivant*, No. 10-125, 2011 WL 4435254, at *5 (M.D. La. Sept. 22, 2011) (citations omitted) ("[B]y putting one's medical condition at issue in a lawsuit, a plaintiff waives any privilege to which he may have otherwise been entitled as to his privacy interests in his medical records."); *Hicks v. Dowies*, No. 21-1896, 2022 WL 1050311, at *2 (W.D. La. Apr. 7, 2022) (citing *Roberts v. River City Care Ctr.*, No. 13-670, 2014 WL 12540478 (W.D. Tex. 2014) (recognizing that a party who places his medical conditions at issue by filing this suit cannot maintain privilege under HIPAA)).

[21] *Tanner*, 2018 WL 3528023, at *2 ("Privileged information, such as communications between a patient and his physician or psychotherapist, may be waived when the patient has placed his mental condition at issue."); *Butler v. La. Dep't of Pub. Safety & Corrs.*, 2013 WL 2407567, at *3 (M.D. La. May 29, 2013) ("If the Court determines, however, that proof of the elements of Plaintiff's causes of action requires the use of the privileged material, the Court is proper to concluded that the psychotherapist-patient [privilege] has been waived."); *see also Stogner*, 2011 WL 4435254, at *5.

[22] *See Payton v. S. Fid. Ins. Co.*, No. 18-2365, at *2 (E.D. La. Nov. 5, 2018) (citations omitted) (finding plaintiffs waived "any privilege by asserting a claim for mental anguish damages"); *Tanner*, 2018 WL 3528023, at *3 ("The Magistrate Judge was not unreasonable in determining that . . . the plaintiff waived the privilege by putting his medical condition at issue by bringing the suit and seeking damages based on his emotional distress); *Stogner*, 2011 WL 4435254, *5; *Moncevais v. Herrick*, No. 22-441, 2023 WL 4666612, at *2 (S.D. Tex. July 20, 2023) ("[W]hen Plaintiff claims medical expenses as damages, she waives the privilege."); *Weber v. Fairley*, No. 18-163, 2019 WL 13212654, at *2 (S.D. Miss. June 26, 2019) ("Plaintiff has placed in issue his physical and mental health by alleging the May 2016 crash caused him permanent disability, permanent disfigurement, permanent loss of enjoyment of life . . . . Under these circumstances, Defendant is entitled to more broadly explore Plaintiff's claimed damages."); *Thomas v. City of Vicksburg*, No. 22-542, 2023 WL 5111977, at *3 (S.D. Miss. Aug. 9, 2023).

[23] *Stogner*, 2011 WL 4435254, *5 (citing *Doe v. City of Chula Vista*, 196 F.R.D. 562 (S.D. Cal. 1999) (noting that, once a plaintiff has elected to seek such damages, she cannot fairly prevent discovery into evidence relating to that element of her claims because the defendants must be free to test the truth of the plaintiff's contention that her mental issues arise *because of* the defendants' conduct)).

claim, broad-ranging discovery may be appropriate.[24] That does not mean, however, that all medical records from the beginning of time are relevant and/or proportional to the needs of the case.[25] Courts will often impose both a time limitation and limitation on certain types of treatments and conditions.[26]

Further, HIPAA authorizes a covered entity[27] to use or disclose protected health information[28] without written authorization of an individual or the opportunity for the individual to agree or object in the course of a judicial or administrative proceeding under two circumstances:

(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or

(ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

(A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to

---

[24] *Billiot v. Triple Marine, LLC*, No. 19-449, 2019 WL 2524441, at *3 (E.D. La. June 19, 2019).

[25] *Id.*; *see also Singleton v. Cannizzaro*, No. 17-10721, 2020 WL 375600, at *3 (E.D. La. Jan. 23, 2020) (recognizing that, while medical records are discoverable and not subject to privilege when a plaintiff places his medical condition at issue, it does not mean that all medical records are relevant and proportional to the needs of the case); *Tijerina v. Guerra*, No. 19-285, 2020 WL 1663181, at *10 (S.D. Tex. Apr. 1, 2020) (denying medical records request that was unlimited in time based on Rule 26(b)(1) proportionality factors where movant did not establish why the requested 5-year period would be insufficient); *Gray-Standberry v. Ashley Distrib. Servs., Ltd.*, No. 20-0638, 2021 WL 2792984, at *3 (W.D. Tex. Mar. 3, 2021) (finding request for 27 years' of medical records, including pediatric records, not proportional); *Stogner,* 2011 WL 4435254, at *6 (limiting medical records request to 10 years after finding request for 23 years' worth of records excessive); *Cummins v. Lollar*, No. 12-560, 2015 WL 12731746, at *2 (N.D. Tex. Jan. 5, 2015) (citation omitted) (request for 50 years' of medical records dating to birth is excessive).

[26] *Victoria W. v. Larpenter*, No. 00-1960, 2001 WL 674156, at *2 (E.D. La. June 14, 2001) (allowing discovery of records reflecting plaintiff's diagnosis with manic depression, bipolar disorder, and borderline personality disorder as relevant to emotional distress claim but denying request for records that provided no time or type of treatment limitations); *Robinett v. State Farm Mut. Auto. Ins. Co.*, No. 02-0842, 2002 WL 31498992, at *4 (E.D. La. Nov. 7, 2002) (Vance, J.) (recognizing defendant had right to discover medical records to determine whether plaintiff's preexisting medical condition impaired his driving at the time of the accident and to determine for impeachment purposes whether plaintiff's various medications affected his credibility), *aff'd*, 83 F. App'x 638 (5th Cir. 2003); *see also Singleton*, 2020 WL 375600, at *3 (E.D. La. Jan. 23, 2020) (assessing relevance of medical records to claims or defenses and proportionality to determine discoverability).

[27] A "covered entity" is defined as (1) a health plan, (2) a health clearinghouse, (3) a healthcare provider who transmit any health information in electronic form in connection with a transaction covered by 45 C.F.R. §§ 1601.101 – 164.535. 45 C.F.R. § 160.103.

[28] "Protected health information" is defined as "'individually identifiable' information that is 'created or received by a health care provider' (or similar entities) that '[r]elates to the past, present, or future physical or mental health or condition of an individual' or the 'provision of health care to an individual.'" *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 792 (N.D. Cal. 2022) (quoting § 160.103).

9

> ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
>
> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512(e)(1). However, HIPAA explicitly requires authorization for the disclosure of "psychotherapy notes,"[29] with only limited exceptions. 45 C.F.R. § 164.508(a)(2). Permissible disclosure pursuant to § 164.512(e) is not listed as an exception, but permissible disclosure pursuant to § 164.512(a) is listed. *Id.* at § 164.508(a)(2)(ii). Section 164.512(a) states:

> (1) A covered entity may use or disclose protected health information to the extent that such use or disclosure is *required by law* and the use or disclosure complies with and is limited to the relevant requirements of such law.
>
> (2) covered entity must meet the requirements described in paragraph (c), (e), or (f) of this section for uses or disclosures required by law.

"[R]equired by law" as described in § 164.512(a)(1) "means a mandate contained in law that compels an entity to make a use or disclosure of protected health information and that is enforceable in a court of law"; court orders, among other things, are included within the ambit of this definition. 45 C.F.R. § 164.103.[30]

---

[29] According to § 164.501, psychotherapy notes are defined as:
   notes recorded (in any medium) by a health care provider who is a mental health professional documenting or analyzing the contents of conversation during a private counseling session or a group, joint, or family counseling session and that are separated from the rest of the individual's medical record. *Psychotherapy notes* excludes medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: Diagnosis, functional status, the treatment plan, symptoms, prognosis, and progress to date.

[30] *See also Disability Rts. Tex. v. Hollis*, 103 F.4th 1058, 1065 (5th Cir. 2024).

### E. Rule 26(b)(4)(C) Trial-Preparation Protection

Documents prepared in anticipation of litigation or for trial by or for another party or its representative are protected work product and thus generally not discoverable, and even if the court requires disclosure, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of the party's attorneys or other representatives. FED. R. CIV. P. 26(b)(3)(A)-(B). These protections apply to communications between the party's attorney and any expert witness expected to testify. *Id.* at 26(b)(4)(C).

A party claiming work product protection under Rule 26(b)(4)(C) has the burden of establishing the basis for the claim.[31] Nonetheless, this protection does not apply to the extent that the communications:

(i)  relate to compensation for the expert's study or testimony;
(ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
(iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

FED. R. CIV. P. 26(b)(4)(C).

### F. Rule 26(c)(1) Certification

A motion for a protective order pursuant to Rule 26(c)(1) "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an

---

[31] *Millsaps Coll. v. Lexington Ins. Co.*, No. 16-193, 2017 WL 3158879, at *3 (S.D. Miss. July 24, 2017) (citing *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)); *Benson v. Rosenthal*, No. 15-782 2016 WL 1046126, at *6-7 (E.D. La. Mar. 16, 2016).

effort to resolve the dispute without court action." This conference requirement is the same as that of Rule 37(a)(1).[32] Conference requirements are no "empty formality":[33]

> Conference requirements encourage resolving discovery disputes without judicial involvement. Failure to confer or attempt to confer may result in unnecessary motions. When the court must resolve a dispute that the parties themselves could have resolved, it must needlessly expend resources that it could better utilize elsewhere. Failure to confer generally serves as a basis for denying a discovery motion.[34]

The court retains discretion to waive strict compliance with Rule 26(c)(1) and may do so when a conference would be a "waste of time" or when "it is clear that the motion is opposed and that a conference would neither have eliminated nor narrowed the parties dispute."[35] While Rule 45 does not require certification that parties (and non-parties) have met and conferred before filing a motion to quash, when such a motion is filed in conjunction with a Rule 26(c)(1) motion, the movant is required to meet and confer and provide the necessary certification.[36]

## IV. ANALYSIS

### A. Standing to Challenge SAS's Subpoenas and Rule 26(c)(1) Certification

The Court need not address Plaintiff's effort to quash the December 6, 2024, subpoenas based on the lack of prior notice because SAS re-issued the subpoenas on January 3, 2025.

---

[32] FED. R. CIV. P. 37(a)(1) ("The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."); *see also Riverbend Env't Servs., LLC v. Crum & Foster Specialty Ins. Co.*, No. 22-31, 2023 WL 2563228, *3 (S.D. Miss. Mar. 17, 2023) ("Both [Rule] 26(c)(1) and [Rule] 37(a)(1) require a certification of good faith."); *Prince v. Transportes Zuazua LLC*, No. 17-21, 2018 WL 2985910 (S.D. Tex. Apr. 6, 2018) (noting meet-and-confer certification required for a Rule 26(c)(1) motion is the "same" required for a Rule 37 motion to compel); *Brown v. Bridges*, No. 12-4947, 2015 WL 11121361, at *3 (N.D. Tex. Jan. 30, 2015); *Baxter v. Louisiana*, No. 21-555, 2022 WL 1509118, at *2 n.11 (M.D. La. May 12, 2022).
[33] *Riverbend*, 2023 WL 2563228, *3.
[34] *Bridges*, 2015 WL 11121361, at *3 (internal quotations and citations omitted).
[35] *Id.* at *5 (quoting *Pulsecard, Inc v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 302 (D. Kan. 1996); *Vinewood Cap., L.L.C. v. Al Islami*, No. 06-316, 2006 WL 3151535, at *2 (N.D. Tex. Nov. 2, 2006); *Obregon v. Melton*, No. 02-1009, 2002 WL 1792086, at *1 n.3 (N.D. Tex. Aug. 2, 2002)).
[36] *UMB Bank, N.A. v. Sanofi*, No. 15-8725, 2017 WL 3738457, at *1 n.1 (S.D.N.Y. Aug. 10, 2017); *accord. 4R4 Sons, LLC v. Tru G. Wilhelm, Inc.*, No. 21-1081, 2022 WL 1359827, *2 (D. Nev. Feb. 8, 2022) (denying party's motion to quash non-party subpoena or for a protective order because the party did not properly meet and confer).

Further, Plaintiff has no standing to challenge alleged improper service because that procedural objection is only available to the subpoenaed party. Plaintiff does, however, have standing to challenge the subpoenas on substantive grounds (i.e., personal right/privilege based on HIPAA, Rule 26(b)(4)(C),[37] and the psychotherapist-patient privilege recognized by *Jaffee v. Redmond*, 518 U.S. 1 (1996)).[38]

Likewise, while Plaintiff lacks standing under Rule 45 to challenge the overbreadth and relevance of the subpoenas to the Ochsner Medical Centers and Dr. Barbee, she does have standing under Rule 26(c) to seek a protective order on those bases. Consequently, Plaintiff was required to provide the pre-motion Rule 26(c)(1) certification, which she concedes she failed to do.[39] The fact that she filed a motion for protective order in conjunction with her motion to quash does not exempt her from this requirement.[40] She has not met and conferred with SAS regarding her

---

[37] The work-product privilege described by Rule 26(b)(4)(C) is only available to testifying expert witnesses. FED. R. CIV. P. 26(b)(4) advisory committee's notes to 2010. Despite identifying Dr. Wolfson in her Initial Disclosures, producing the Plan to SAS, and alleging Rule 26(b)(4)(C) protection for communications between the doctor and her counsel, Plaintiff argues that she has not identified the doctor "as a testifying expert" yet. ECF Nos. 72-1 at 2; 72-2; 73 at 4 n.2. Regardless, because Plaintiff has alleged this privilege, the Court will consider if it is a basis for standing. *See McHugh v. St. Tammany Par.*, No. 24-1300, 2024 WL 3617535, at *10 (E.D. La. Aug. 1, 2024) (Long, J.) (quoting *Brown*, 595 F.2d at 966; and citing *Burkette v. E. Feliciana Par. Sheriff*, 606 F. Supp. 3d 297, 303 n.26 (M.D. La. 2022) ("[A] party *alleging* some personal privacy right or privilege in the documents sought has standing to challenge a subpoena.")).

[38] *Harris v. Exec. Affiliates, Inc.*, No. 23-607, 2024 WL 4427796, at *2 (M.D. La. Oct. 4, 2024) (citing *Giarrantano v. Huntington Ingalls Inc.*, No. 22-88, 2022 WL 16552816, at *4 (E.D. La. Oct. 31, 2022); *Dean v. Foods*, No. 21-5, 2022 WL 20112617, at *3 (E.D. Tex. Sept. 26, 2022)) ("Courts in the Fifth Circuit generally find a party has standing pursuant to [Rule] 45 to quash a non-party subpoena that seeks medical information."); *Abraham v. Shelter Mut. Ins. Co.*, No. 20-3060, 2021 WL 4645018, at *3 (E.D. La. Oct. 7, 2021) (finding a party had standing to challenge a subpoena duces tecum issued to its expert by alleging privilege pursuant to Rule 26(b)(4)(C)); *Payne v. Seminole Elec. Coop., Inc.*, No. 19-1173, 2020 WL 7324683, at *4 (M.D. Fla. Dec. 11, 2020) (finding a party has standing to challenge a subpoena directed to her treating psychiatrist by arguing the records are protected by the psychotherapist-patient privilege).

[39] ECF No. 73 at 8.

[40] *Sanofi*, 2017 WL 3738457, at *1 n.1.

objections to its subpoenas, and her attempt to confer[41] was not made in good faith.[42]  While a conference would have narrowed this dispute,[43] further delay in addressing Plaintiff's motions "would not comport with the overriding principle set forth in [Rule 1] that the courts construe and administer the Federal Rules of Civil Procedure 'to secure the just, speedy, and inexpensive determination of every action and proceeding.'"[44]  Thus, the Court will consider the merits of her motion.

### B. Bases for Challenging SAS's Subpoenas

#### 1. Modification of SAS's Subpoena to Dr. Wolfson is Appropriate

Plaintiff alleges her counsel's communications with Dr. Wolfson are privileged pursuant to Rule 26(b)(4)(C), and therefore, because SAS requests the doctor's complete file pertaining to the Plan, including "electronic and/or written data and communications" regarding Plaintiff ("Request No. 1"),[45] the subpoena should be quashed.  SAS impliedly agrees that, to the extent the communications do not meet Rule 26(b)(4)(C)'s exceptions, the communications are privileged.[46]

Modification, rather than quashing, the subpoena is the preferred approach.  Accordingly, Plaintiff's motion to quash SAS's subpoena to Dr. Wolfson is denied.  However, the subpoena is modified to exclude from production communications between Plaintiff's counsel and Dr.

---

[41] Contrary to what Plaintiff asserts, there was no agreement that SAS's counsel would call Plaintiff's counsel to discuss the subpoena.  ECF No. 71 at 17 ("[I] will call you in the afternoon *if* court is dismissed early enough.").  Her counsel, via email, noted he would provide Plaintiff's objections and requested a call. *Id.* at 18-19.  More than a week went by without further attempt to contact SAS's counsel, and then on December 29, 2024, a Sunday, Plaintiff provided SAS her nine objections and an arbitrary deadline to withdraw its subpoenas by the following day, December 30th.  *Id.* at 20-21.  She then filed her motion on December 31st.
[42] *See Compass Bank v. Shamgochian*, 287 F.R.D. 397, 400 (S.D. Tex. 2012) ("Plaintiff's single letter unilaterally identifying flaws in Defendant's discovery responses and setting an arbitrary response deadline for Defendant would seem to be inadequate, as it does not equate to a good faith conferral or attempt to confer.").
[43] ECF No. 72 at 7 n.1 ("SAS would be amenable to the entry of a reasonable protective order . . . .").
[44] *Bridges*, 2015 WL 11121361, at *5 (quoting FED. R. CIV. P. 1).
[45] ECF No. 72-4 at 5.
[46] ECF No. 72 at 12.

Wolfson, or his assistants,[47] that do not fall into a listed exception under Rule 26(b)(4)(C). Such excluded information must be identified on a proper privilege log, in accordance with Rule 26(b)(5). Conversely, to the extent the responsive information does fall into a listed exception, Dr. Wolfson is required to produce that information.[48]

### 2. Plaintiff has Waived Privilege to Her Relevant Medical Records

Plaintiff has waived any privilege covering her medical records by filing suit. Plaintiff alleges she has sustained severe fractures to her right femoral shaft because of the Incident; her injuries have caused "life-altering effects" and forced her to incur medical and rehabilitation expenses; and she continues to be deprived of her enjoyment of life, pursuits, and interest.[49] She seeks emotional distress damages,[50] as well as damages for, among other things, treatment expenses.[51] Accordingly, Plaintiff has waived any privilege, including the psychotherapist-patient privilege,[52] she would otherwise be entitled to by her privacy interest in her medical records,

---

[47] FED. R. CIV. P. 26(b)(4) advisory committee's notes to 2010 ("Protected 'communications' include those between the party's attorney and assistants of the expert witness.").
[48] *D'Souza v. Marmaxx Operating Corp.*, No. 15-256, 2017 WL 1322243, at *7-8 (W.D. Tex. Apr. 7, 2017) (ordering same where party claimed communications were privileged pursuant to Rule 26(b)(4)(C) without further argument).
[49] ECF No. 25 ¶¶ 33, 37-38.
[50] ECF No. 72-1 at 5 (listing "[l]osses to her self-esteem" and "[l]oss of enjoyment of life").
[51] *Id.* at 4.
[52] Even if Plaintiff had not waived the psychotherapist privilege, Plaintiff has not offered any evidence to establish that Dr. Barbee is a licensed psychotherapist. Instead, she simply asserts that he knows the "psychiatric impact" of her injuries. ECF No. 72-1 at 3. Assertions that a doctor discussed mental issues with a patient does not transform the physician into a licensed *psychotherapist. Voe*, 2024 WL 5120258, at *9 (citing cases); *Scroggins v. Floyd Healthcare Mgmt. Inc.*, No. 14-274, 2015 WL 13777035, at *5 (N.D. Ga. Mar. 18, 2015) (holding that "documents sought from those medical providers who are not psychotherapists are not privileged.").

including any mental health records, because she has put her medical condition[53] and mental status[54] at issue.

Contrary to her assertions otherwise, pre-Incident medical conditions are relevant because the carrier "is liable for damage sustained" from a passenger's death/injury only to the extent that an accident "caused" the death/injury.[55] Insofar as SAS asserts that it is not liable for certain injuries allegedly not caused by the accident, Plaintiff's medical condition is relevant to that defense.[56] SAS indicates the Plan notes Plaintiff has pre-Incident medical conditions (specifically "osteoporosis, a left femur fracture, postsurgical hypothyroidism, and subdural hematoma"),[57] and Plaintiff has failed to establish there is no possibility that the pre-Incident medical records are relevant to SAS's defense.[58] Likewise, Plaintiff's mental health records are relevant because she seeks emotional distress damages and because they may reflect alternative explanations for her mental health issues other than the alleged accident.[59]

---

[53] *Stogner*, 2011 WL 4435254, at *5 (citing *Midalgo v. McLaughlin*, No. 06-330, 2009 WL 890544, at *2 n.5 (N.D.N.Y. Mar. 30, 2009); *Bayne v. Provost*, 359 F. Supp. 2d 234, 238 (N.D.N.Y. 2005) (noting that "[b]y commencing this action and seeking damages for medical injuries, [plaintiff] placed his relevant medical condition at issue"); *Hitzig v. Hubbard*, No. 08-102, 2011 WL 3360410 (D. Vt. Aug. 3, 2011) (Defendants were "clearly" entitled to relevant medical documentation where the plaintiff claimed significant damages, based largely upon physical injuries, and claiming to be facing "large medical expenses for the foreseeable future," thereby putting her medical condition at issue in the suit. The defendants were entitled to medical documentation to confirm the extent of the plaintiff's physical injuries)); *Hicks*, 2022 WL 1050311, at *2.

[54] *Stogner*, 2011 WL 4435254, at *5 (citation omitted); *see also Payton*, 2018 WL 5786047, at *2 (citations omitted); *Doe*, 196 F.R.D. at 566-67 ("It is the patient who decides whether to file a lawsuit claiming emotional distress damages, and she has the control over the scope of the litigation, and consequently, the scope of her privilege.").

[55] Convention for the Unification of Certain Rules for International Carriage by Air, art. 17(1), May 28, 1999, 2242 U.N.T.S. 309, *as reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33282734 (2000).

[56] ECF Nos. 65 at 5; 72 at 10 ("The prior medical records requested . . . are vital to SAS's defense of this action, especially as it concerns *whether and to what extent* the alleged injuries in this case pre-existed the Incident.").

[57] ECF No. 72 at 2.

[58] *See Dotson*, 2017 WL 11535244, at *2 ("Courts in the Fifth Circuit hold that a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party.").

[59] *Payton*, 2018 WL 5786047, at *2 (quoting *Bacharach v. Sun T. Mortg., Inc.*, No. 17-5141, 2015 WL 1843007, at *7 (E.D. La. Apr. 22, 2015)) ("[M]edical records [of a plaintiff] asserting emotional distress damages are relevant to help the Defendant assess the Plaintiff's emotional distress claim and may provide the defendant with an alternative explanation for the Plaintiff's emotional distress claim."); *Victoria W.*, 2001 WL 674156, at *2 (citing *Doe*, 196 F.R.D. at 568) (when plaintiff brings claim for emotional distress damages, defendant is entitled to show that other factors may have contributed to plaintiff's damages); *Hingle v. Bd. of Adm'rs of Tulane Educ. Fund*, No. 95-134,

Plaintiff's objection to the lack of a timeframe for her medical records sought from Dr. Barbee, however, is well founded. SAS's request is modified to encompass medical records for the 10-year period before suit (i.e., 2011 to present).

Plaintiff initially asserted that SAS's subpoenas should be quashed because SAS did not comply with § 164.512(e)(1)(ii); in her Reply, which is not the proper avenue to raise a new issue,[60] she asserts that SAS's subpoenas be quashed because SAS has not complied with § 164.508(a)(2) as well. Plaintiff fails to recognize, however, that HIPAA is satisfied by a court order authorizing disclosure,[61] even of psychotherapy notes.[62] For that reason, courts regularly opt not to quash subpoenas for failure to satisfy § 164.512(e)(1)(ii) when issuance of a court order authorizing disclosure is sufficient.[63] The availability of a stipulated protective order, similar to the sample on this Court's website, is an issue that the parties could have (and should have) addressed during a meet and confer before the filing of this motion.[64] The parties are directed to file a Joint Motion

---

1995 WL 731696 (E.D. La. Dec. 7, 1995) (Vance, J.) (finding records of plaintiff's psychiatric counseling are relevant to the extent they may provide defendants with an alternative explanation for emotional distress claim).

[60] *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 251-52 (5th Cir. 2022) (citations omitted) ("As a general matter, a district court is not required to address new legal issues raised only in a reply brief."); *Little Tchefuncte River Ass'n v. Artesian Util. Co.*, 155 F. Supp. 3d 637, 657 (E.D. La. 2015) (Brown, J.) (quoting *Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008)) ("Arguments cannot be raised for the first time in a reply brief."); *J.I. ex rel. Interiano v. Jefferson Par. Sch. Bd.*, No. 23-1532, 2023 WL 8563034, at *6 n.5 (E.D. La. Dec. 11, 2023) (Guidry, J.) (quoting *Iteld, Bernstein & Assocs., LLC v. Hanover Ins. Grp.*, No. 06-3418, 2009 WL 2496552, at *4 (E.D. La. Aug. 12, 2009) (Vance, J.) (citing *United States v. Jackson,* 426 F.3d 301, 304 n.2 (5th. Cir. 2005); and citing *Weems v. Hodnett*, No. 10-1452, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011) ("[I]t is improper for the movant to sandbag and raise wholly new issues in a reply memorandum. The scope of the reply should be limited to addressing the arguments raised by the memorandum in opposition.")).

[61] § 164.512(e)(1)(i).

[62] *See* §§ 164.508(a)(2)(ii), 164.512(a)(1), 160.103.

[63] *See United States v. Sinha*, No. 14-9, 2014 WL 12665157, at *3 (S.D. Miss. Nov. 24, 2014) (denying motion to quash subpoenas but issuing a protective order that contains the terms set forth in 45 C.F.R. 164.512(e)(1)(v)); *Scroggins*, 2015 WL 13777035, at *4 ("Defendants may notify the medical providers and pharmacies who received subpoenas of this Order, and inform them that they are allowed to disclose the protected health information sought . . . ."); *see also Blum v. Positive Physicians Ins. Co.*, No. 20-5423, 2021 WL 5404882, at *4 (D.N.J. Aug. 17, 2021) ("[I]f the Court orders Overlook produce the medical records, the facility may do so without running afoul of HIPAA.").

[64] ECF No. 72 at 7 n.1 (SAS has argued it is agreeable to entry of a protective order). *See Philips v. Pitt Cnty. Mem'l Hosp. Inc.*, No. 05-97, 2005 WL 8159154, at *2 (E.D.N.C. Dec. 20, 2005) (denying party's motion to quash and ordering parties "to confer and attempt to reach an agreement upon a joint protective order which would satisfy the relevant HIPAA requirements" since the defendants indicated they were amendable to one); *Gregg v. B&G Transps., LLC*, No. 20-766, 2021 WL 1598969, at *3 (E.D. Mo. Apr. 23, 2021) ("While there is no protective order

for Entry of a Protective Order and mark all confidential records produced by Ochsner, Dr. Wolfson and Dr. Barbee as confidential and restricted under the terms of the governing Protective Order.

## V.     **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiff's Motion for a Protective Order and Motion to Quash Non-Party Subpoenas is GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

IT IS FURTHER ORDERED that Plaintiff's mental health records from 2011 through date be produced, subject to an agreed protective order.

IT IS FURTHER ORDERED that parties' requests for attorneys' fees and costs are DENIED pursuant to Rules 26(c)(3) and 37(a)(5)(C).

New Orleans, Louisiana, this ___6th___ day of February, 2025.

*[signature]*
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

in place . . ., Plaintiff . . . has proposed entering into a stipulated protective order. The Court agrees a proper protective order would address Defendant['s] . . . privacy concerns, and the Court will order the parties file a stipulated protective order before the disclosure of Defendant['s] . . . employment records. For the foregoing reason, Defendant['s] motion to quash is denied.").