UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SUSAN HARDY,**           Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1591** |
| **SCANDINAVIAN AIRLINES SYSTEM,**           Defendant | **SECTION: "E" (2)** |

## ORDER AND REASONS

Before the Court is Defendant Scandinavian Airlines System's ("Defendant") Motion to Limit or Exclude Testimony of Matthew G. Robinson.[1] Plaintiff Susan Hardy ("Plaintiff") filed an opposition.[2] Defendant filed a reply.[3]

## BACKGROUND

This action arises from an incident at the Oslo Gardermoen Airport on August 23, 2019.[4] Plaintiff departed on a United Airlines flight from New Orleans to New Jersey.[5] In New Jersey, Plaintiff transferred to a flight operated by Defendant, departing from New Jersey to Oslo, Norway.[6] Plaintiff alleges that she fell to the ground while disembarking the aircraft in Oslo, due to a five-to-six-inch gap between the bottom of the aircraft door and the passenger boarding bridge ("PBB") and suffered injuries.[7]

Relevant to the instant Motion in Limine, Plaintiff engaged expert Matthew G. Robinson ("Mr. Robinson"), as an "aviation safety expert, accident investigator and

---

[1] R. Doc. 97.
[2] R. Doc. 105.
[3] R. Doc. 110.
[4] R. Doc. 25 at p. 5.
[5] *Id.* at p. 3.
[6] *Id.* at pp. 4-5.
[7] *Id.* at pp. 5-6.

1

reconstructionist."[8] Mr. Robinson was asked "to determine the causes of injury to" Plaintiff.[9] Mr. Robinson reached four conclusions: (1) Defendant "violated requirements to ensure" the vertical gap between the aircraft's floor and the PBB was equal to the lower lip of the aircraft doorsill, providing a level boarding surface; (2) Defendant "violated International requirements to report" and investigate Plaintiff's injury; (3) Defendant's "failure to warn passengers of the" gap between the aircraft floor and the PBB "led to" Plaintiff's injury; and (4) Defendant's failure to conduct a safety investigation is clear evidence of "a pathological and/or bureaucratic organizational culture."[10]

In the instant motion, Defendant does not challenge Mr. Robinson's second opinion.[11] Defendant does not contest Mr. Robinson's qualifications as an aviation safety expert; he clearly is an expert and will be allowed to testify in this area.[12] Instead, Defendant moves to exclude his first and third opinions because they are based on unreliable methodologies.[13] Defendant moves to exclude Mr. Robinson's fourth opinion based on his qualifications.[14] Defendant also argues Mr. Robinson's fourth opinion should be excluded because (1) the opinion does not follow a reliable methodology, (2) there is an analytical gap between the opinion and its basis, and (3) the opinion is unduly prejudicial.[15] Plaintiff opposes the motion arguing Mr. Robinson is qualified to offer his expert opinions, used reliable methodology, and overall offers relevant and admissible opinions.[16]

---

[8] R. Doc. 105 at p. 3. Mr. Robinson states he is an "aviation safety professional" in his expert report. R. Doc. 105-3 at p. 2.
[9] R. Doc. 97-2 at p. 2.
[10] *Id.* at p. 13.
[11] R. Doc. 97; R. Doc. 97-1.
[12] *Id.*; R. Doc. 97-1.
[13] R. Doc. 97.
[14] R. Doc. 97-1 at pp. 16-17..
[15] R. Doc. 97-1 at pp. 15-19.
[16] R. Doc. 105.

2

**LEGAL STANDARD**

**I.   Motion in Limine Standard**

"It is well settled that motions in limine are disfavored."[17] "[T]he purpose of a motion in limine is to prohibit opposing counsel 'from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' mind.'"[18] "Evidence is relevant" if "it has *any* tendency to make a fact . . . of consequence in determining the action" "more or less probable than it would be without the evidence."[19] "Evidence which is not relevant is not admissible."[20] Under Federal Rule of Evidence 403, the Court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."[21] "'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[22]

"An order in limine excludes only clearly inadmissible evidence; therefore evidence should not be excluded before trial unless it is clearly inadmissible on *all* potential grounds."[23] Instead, courts should reserve evidentiary rulings until trial so that questions as to the evidence "may be resolved in the proper context."[24] "When ruling on motions in

---

[17] *Auenson v. Lewis*, No. 94-2734, 1996 WL 457258, at *1 (E.D. La. Aug. 12, 1996) (citing *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)).
[18] *MGMTL, LLC v. Strategic Tech.*, No. 20-2138, 2022 WL 594894, at *2 (E.D. La. Feb. 28, 2022).
[19] FED. R. EVID. 401 (emphasis added).
[20] FED. R. EVID. 402.
[21] FED. R. EVID. 403.
[22] *Old Chief v. United States*, 519 U.S. 172, 180 (1997).
[23] *Rivera v. Robinson*, 464 F. Supp. 3d 847, 853 (E.D. La. 2020) (quoting *Auenson*, 1996 WL 457258, at *1)).
[24] *Auenson*, 1996 WL 457258, at *1.

limine, the Court 'maintains great discretion [as to] evidentiary determinations.'"[25] If the evidence is not clearly inadmissible on all grounds, it is better for the court to decline to rule in advance of trial so that it will have the opportunity to resolve issues in context.

## II.   Federal Rule of Evidence 702 Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[26]

Testimony from a *qualified* expert is admissible only if it is both relevant and reliable.[27] Thus, the threshold inquiry is whether the expert witness possesses the requisite qualifications to render an opinion on particular subject matter.[28]

If the expert's qualifications are found to be sufficient, the court must then examine whether the expert's opinions are reliable and relevant.[29] The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[30] provides the analytical framework for determining whether expert testimony is admissible under Rule 702. "Under *Daubert*, Rule 702 charges trial courts to act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the

---

[25] *Jackson v. State Farm Fire & Cas. Co.*, 656 F. Supp. 3d 676 (W.D. La. 2023) (quoting *Parker v. John W. Stone Oil Distribs., L.L.C.*, No. 18-3666, 2019 WL 5212285, at *2 (E.D. La. Oct. 16, 2019)).
[26] FED. R. EVID. 702.
[27] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).
[28] *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 798 (E.D. La. 2011); *see also Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert to testify if it finds that the witness is not qualified to testify in a particular field or a given subject.").
[29] *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).
[30] 509 U.S. 579 (1993).

testimony is scientifically valid,'"[31] and of whether that reasoning or methodology "can be reliably applied to the facts of the case."[32] The party offering the expert opinion must show by a preponderance of the evidence that the expert's testimony is reliable and relevant.[33]

"[E]xpert testimony proffered" must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."[34] This is essentially a relevance requirement.[35] With respect to the proper scope of expert testimony, Rule 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."[36] Nevertheless, "[i]f the expert's testimony brings no more to the finder of fact than the lawyers can offer in argument, the expert's opinions should be excluded."[37]

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact.[38] Thus, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[39] The Court is not concerned with whether the opinion is correct, but whether the preponderance of the evidence establishes that the

---

[31] *See Pipitone*, 288 F.3d at 243-44 (quoting *Daubert*, 509 U.S. at 592-93).
[32] *Valencia*, 600 F.3d at 423-24; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). *See also Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003).
[33] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).
[34] *Denley v. Hartford Ins. Co. of Midwest*, No. 07-4015, 2008 WL 2951926, at *3 (E.D. La. July 29, 2008) (citing *Daubert*, 509 U.S. at 591).
[35] *Cunningham v. Bienfang*, 2002 WL 31553976 (N.D. Tex. Nov. 15, 2002).
[36] FED. R. EVID. 704.
[37] *Sudo Properties, Inc. v. Terrebone Parish Consol. Gov't*, No. 04-2559, 2008 WL 2623000, at *8 (E.D. La. July 2, 2008).
[38] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[39] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596).

opinion is reliable.[40] "It is the role of the adversarial system, not the court, to highlight weak evidence."[41]

Rule 702 requires an expert to base his or her testimony on "sufficient facts or data." This requires exclusion of opinions based on "insufficient, erroneous information."[42] But experts may rely on one version of a disputed fact, and "reliable expert testimony often involves estimation and reasonable inferences from a sometimes incomplete record."[43] Thus, the presence of unknown variables in an expert's opinion do not necessarily render that opinion unreliable or unhelpful to the jury.[44]

## LAW AND ANALYSIS

### I. Mr. Robinson may not offer his first opinion that Defendant violated a "requirement" that a level boarding surface be provided.

Defendant moves to exclude Mr. Robinson's opinion that Defendant "violated requirements to ensure the vertical gap between the aircraft cabin floor and [PBB] was equal to the lower lip of the aircraft doorsill."[45] Defendant argues "too great an analytical gap exists between Robinson's opinions and the underlying facts" because Mr. Robinson relies on the Federal Aviation Administration's ("FAA") Advisory Circular No. 150/5220-21C in forming this opinion (the "FAA Advisory Circular").[46] Defendant attacks Plaintiff's reliance on the FAA Advisory Circular because it is nonbinding in Oslo.[47] Furthermore, Defendant cites an International Transport Association ("IATA") publication that does

---

[40] *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).
[41] *Primrose*, 382 F.3d at 562.
[42] *See Moore v. Int'l Paint, L.L.C.*, 547 Fed. App'x 513, 515 (5th Cir. 2013) (quoting *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009)).
[43] *See id.* at 515-16.
[44] *See Bocanegra*, 320 F.3d at 589-90.
[45] R. Doc. 97-1 at pp. 13-14; R. Doc. 105-3 at p. 13.
[46] R. Doc. 97-1 at pp. 13-14.
[47] *Id.*

6

not require the aircraft door be even with the PBB.[48] Defendant claims this "IATA GOM" is binding in Oslo.[49]

In opposition, Plaintiff admits "the FAA Advisory Circular is not binding on [Defendant] under European law."[50] Still, Plaintiff argues the FAA Advisory Circular "is an internationally recognized best practice and technical benchmark."[51] In Mr. Robinson's supplement to his expert report, he admits the FAA Advisory Circulars is "advisory," "informational," and "not regulatory."[52]

Because the FAA Advisory circular is not binding under European law, is "advisory/informational," and is "not regulatory,"[53] Mr. Robinson may not testify that Defendant violated a "requirement" that there be no vertical gap between the aircraft door and the PBB. Mr. Robinson's opinion on this issue is not wholly unreliable. Mr. Robinson may testify based on his knowledge and experience as to the types of and operations of PBBs, what the best practice is regarding height of a PBB in relation to aircraft doors, whether Defendant's conduct complied with the best practice, and his measurement of the vertical gap (distance) between the aircraft door and the PBB on this flight. Cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof is the proper means of attacking Mr. Robinson's opinion regarding the gap between the aircraft floor and the PBB, not a *Daubert* motion.[54] The bases and sources of Mr. Robinson's opinion affect the weight of the evidence rather than its admissibility and

---

[48] *Id.*; R. Doc. 97-9.
[49] R. Doc. 97-1 at pp. 13-14.
[50] R. Doc. 105 at p. 21.
[51] *Id.* at pp. 21-22.
[52] R. Doc. 105-4 at p. 1.
[53] *Id.*; R. Doc. 105 at p. 21.
[54] *Pipitone*, 288 F.3d at 250 (internal quotation marks omitted) (quoting *Daubert*, 509 U.S. at 596).

should be left for the finder of fact to judge.[55] At trial, Plaintiff will have the opportunity to conduct a vigorous cross-examination of Mr. Robinson to identify weaknesses in his testimony and to attack his credibility.[56]

### II. Mr. Robinson may offer his third opinion on the cause of Plaintiff's injuries.

Next, Defendant moves to exclude Mr. Robinson's opinion that Plaintiff's fall resulted from (1) the height difference between the aircraft door and the PBB, and (2) Defendant's failure to warn Plaintiff of this height difference.[57] Defendant argues for exclusion of Mr. Robinson's causation opinions because the opinions rely on Mr. Robinson's unsworn interview with Plaintiff rather than contradictory sworn deposition testimony of Plaintiff.[58] In her interview with Mr. Robinson on March 10, 2025,[59] Plaintiff reported the flight crew did not warn passengers of the gap between the aircraft door and the PBB.[60] Plaintiff also recounted how the accident occurred.[61] Mr. Robinson's expert report is dated March 13, 2025.[62] A month later, during her deposition on April 17, 2025, Plaintiff testified she did not remember whether the flight crew warned of the gap or how she fell.[63]

---

[55] *See Primrose*, 382 F.3d at 562; *Rosiere v. Wood Towing, LLC*, No. 07-1265, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (citing *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir. 1996)) (emphasis added); *Wolfe v. McNeil-PPC, Inc.*, No. 07-348, 2011 WL 1673805, at *6 (E.D. Pa. May 4, 2011).
[56] *See id.* ("[W]hile exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits.").
[57] R. Doc. 97-1 at pp. 9-13.
[58] *Id.*
[59] R. Doc. 97-2 at p. 11.
[60] R. Doc. 105-3 at pp. 4, 11; R. Doc. 97-5 at pp. 4-6.
[61] R. Doc. 105-3 at pp. 4, 11; R. Doc. 97-5 at pp. 4-6.
[62] R. Doc. 97-2 at p. 1.
[63] R. Doc. 97-3 at pp. 1, 6, 10-13.

Defendant argues Mr. Robinson's decision to credit unsworn testimony over sworn testimony "improperly infringes on the role of the trier of fact."[64] Defendant further argues Mr. Robinson's opinion is unreliable because he "did not provide any methodology to support his decision to wholly ignore Ms. Hardy's deposition testimony."[65]

In opposition, Plaintiff argues Mr. Robinson's opinion is "relevant and reliable."[66] Plaintiff argues there was no contradiction between Plaintiff's sworn deposition testimony and the statements relied upon by Mr. Robinson.[67]

In Mr. Robinson's report, he describes Plaintiff's accident: "[u]pon stepping out of the aircraft, with her right foot onto the PBB while her left foot remained in contact with the aircraft, the excessive vertical gap created an unexpected, dangerous, and unsafe condition of the aircraft's exit way, causing [Plaintiff] to fall down onto the PBB."[68] Mr. Robinson attested that this version of the facts came from an unrecorded conversation with Plaintiff about a month prior to her deposition.[69] Defendant argues the facts that appear in Mr. Robinson's report are contradicted by the testimony in Plaintiff's deposition.[70] During her deposition, Plaintiff attested that she recalls only "tumbling out of the plane," and does not remember where she was looking when she exited the aircraft or whether she led with her left or right foot as she stepped out of the aircraft.[71] Plaintiff further testified that she "assume[s] . . . the location of the [PBB], that it was not a normal step," caused her fall.[72]

---

[64] R. Doc. 97-1 at p. 12.
[65] *Id.* at p. 11.
[66] R. Doc. 105 at pp. 17-18.
[67] *Id.* at p. 15.
[68] R. Doc. 105-3 at p. 4.
[69] R. Doc. 97-5 at pp. 4-6.
[70] R. Doc. 97-1 at p. 10.
[71] *See* R. Doc. 97-3 at pp. 10-12.
[72] *Id.* at p. 13.

9

In Mr. Robinson's interview with Plaintiff, he reports that Plaintiff "stated that at no time was she warned nor made aware of the excessive vertical gap between the aircraft cabin floor and the PBB."[73] Defendant argues this statement is contradicted by Plaintiff's deposition testimony.[74] At her deposition, Plaintiff attested she "does not recall" the announcements made when she landed in Oslo.[75]

Mr. Robinson's opinion is not unreliable simply because it is based in part on his interview with Plaintiff.[76] "The number of sources on which an expert may reasonably rely 'is virtually infinite,' and such sources include interviews . . . and general knowledge or experience."[77] For example, in *Doctor's Hospital of Jefferson, Inc. v. Southeast Medical Alliance, Inc.*, the plaintiff argued for exclusion an expert's survey data because the data was based on "informal conversations" that were "inherently unreliable."[78] The court rejected this argument because the plaintiff did not show "that the interviews held by [the expert were] not an information-gathering device reasonably relied on by" similar experts.[79] The court explained that "the interviews upon which [the expert] base[d] his opinion go more toward the weight rather than admissibility of his opinion."[80]

Whether Mr. Robinson relied upon adequate information goes to the weight to be assigned to his testimony, as it involves the bases and sources upon which he relied in

---

[73] R. Doc. 105-3; R. Doc. 97-5 at p. 13.
[74] R. Doc. 97-1 at pp. 10-11.
[75] R. Doc. 97-3 at p. 6.
[76] *Sinclair v. State Farm Fire & Cas. Co.*, No. 09-447, 2010 WL 8150678, at *3-4 (E.D. La. Feb. 10, 2010) ("The fact that [the expert] relied on the plaintiffs' statements in forming his expert opinion does not render his testimony unreliable. In the event that the [c]ourt determines that any underlying inadmissible hearsay statements should be disclosed to the jury, [the defendant] may request a limiting instruction. In addition, [the defendant] may call or cross-examine the plaintiffs as witnesses if it so chooses.").
[77] *Hecker v. Bay Towing Corp.*, No. 04-1981, 2006 WL 6153347, at *2 (E.D. La. Feb. 8, 2006) (citing JACK B. WEINSTEIN AND MARGARET A. BERGER, 4 WEINSTEIN'S FEDERAL EVIDENCE § 703.04[3], at 703-15 to 703-20 (2d ed. 2005)).
[78] 878 F. Supp. 884, 886-87 (E.D. La. 1995).
[79] *Id.* at 887.
[80] *Id.*

reaching his conclusions in this case. The difference between Plaintiff's recall during Mr. Robinson's interview and during her deposition "may be attacked on cross-examination, but the Court cannot say that the [reliance on Plaintiff's interview] reaches the level of 'altered facts and speculation' designed to bolster Plaintiff's position."[81] Mr. Robinson may testify with respect to the mechanics of the accident and his opinion regarding the cause of the accidence.

### III. Mr. Robinson may not offer his fourth opinion on Defendant's organizational culture.

Defendant moves to exclude Mr. Robinson's fourth opinion that "Defendant's failure to conduct a safety Investigation and provide safety recommendations is clear evidence of a pathological and/or bureaucratic organizational culture."[82] Quoting the Handbook of Aviation Human Factors (the "Handbook"), Mr. Robinson includes in his report the statement that pathological organizations handle anomalies or problems through suppression, which "does not make the problem go away."[83] He further opines that, "Bureaucratic organizations tend to be good at routine or predictable problems,"[84] and that these organizations "sometimes make light of . . . problems or only address those immediately presenting themselves, and the underlying causes may be left untouched."[85]

Plaintiff cites to Mr. Robinson's education, work history and certification as an HFACS Professional as proof of his qualifications.[86] Mr. Robinson earned his master's degree in 2006 and earned his certification between 2006 and 2009. At a minimum, Mr.

---

[81] *Arnold v. Canal Barge Co.*, No. 13-4966, 2014 WL 2465313, at *3 (E.D. La. June 2, 2014) (citing *Moore*, 547 Fed. App'x at 515).
[82] R. Doc. 97-1 at pp. 14-19; R. Doc. 105-3 at p. 13.
[83] R. Doc. 105-3 at p. 11.
[84] *Id.* at p. 12.
[85] *Id.*
[86] R. Doc. 105 at pp. 3-6; R. Doc. 105-2 at pp. 12-13; R. Doc. 105-1 at p. 5.

Robinson's training was over fifteen years ago.[87] Further, Mr. Robinson's HFACS Professional certification is the only specialized training he has received in "organizational culture."[88] To receive this certification, Mr. Robinson attended two-to-three eight hour days of training.[89] Tellingly, neither the word "corporate" nor the word "culture" appear on Mr. Robinson's curriculum vitae.[90]

Plaintiff argues Mr. Robinson was instructed "on Safety Management Systems and Human Factors, which explicitly encompass organizational culture and risk mitigation practices."[91] Plaintiff cites to Mr. Robinson's curriculum vitae to show that "Mr. Robinson routinely performs evaluations of organizational culture in hazard analysis, systemic risk auditing, and accident/incident reviews."[92] Plaintiff also argues "Mr. Robinson is a Certified Human Factors Analysis and Classification Professional. This certification provides professionals with knowledge of the aspects and components of organizational cultures, including supervisory deficiencies, that lead to aviation accidents."[93] Plaintiff relies on Mr. Robinson's master's degree in aviation systems safety from Embry-Riddle Aeronautical University.[94] This program focused specifically on the characteristics and analyzation of the different types of organizational cultures."[95] Plaintiff point out that Mr. Robinson was allowed "to opine on the aspects of [a defendant]'s corporate culture that led to that helicopter accident" in a separate case in a New York state court.[96]

---

[87] R. Doc. 105-2 at pp. 12-13; R. Doc. 105-1 at p. 5.
[88] R. Doc. 105-2 at pp. 12-13; R. Doc. 105-1; R. Doc. 105 at pp. 4-6.
[89] R. Doc. 105-2 at pp. 12-13.
[90] R. Doc. 105-1.
[91] R. Doc. 105 at p. 4.
[92] *Id.* at pp. 4-5 (citing R. Doc. 105-1).
[93] *Id.* at p. 5 (citing R. Doc. 105-2 at pp. 12-13).
[94] *Id.* at p. 5.
[95] *Id.* at pp. 5-6.
[96] *Id.* at p. 9.

12

Plaintiff requests that Mr. Robinson be allowed to offer opinion testimony as to Defendant's "organizational safety culture."[97] Plaintiff asserts Mr. Robinson's qualifications to offer this opinion testimony include his education, work experience, and certification as a "Human Factors Analysis and Classification professional, CHP," also known as a "Certified HFACS Professional."[98] Mr. Robinson attended a two-to-three day course offered by HFACS, Inc. to receive this certification.[99] Mr. Robinson obtained his certification sometime "between 2006 and 2007."[100]

Defendant argues Mr. Robinson does not have the qualifications to offer an opinion on Defendant's organizational culture because Mr. Robinson "does not have the requisite educational or professional background to evaluate the organizational culture of privately held airlines or any other private institutions."[101] Defendant argues Mr. Robinson did not follow a reliable methodology because there is an analytical gap between Mr. Robinson's opinion on Defendant's organizational culture and the basis for his opinion. Finally, Defendant argues Mr. Robinson's opinion on Defendant's organizational culture is unduly prejudicial, of little relevance to Defendant's liability in this case, and risks confusing the jury.[102]

Defendant further argues for exclusion of Mr. Robinson's opinion on Defendant's organizational culture based on his methodology because Mr. Robinson overly relies upon the Handbook in reaching his opinion.[103] The Handbook states that, "[a]lthough Westrum's schema," which includes pathological and bureaucratic organization types, "is

---

[97] R. Doc. 105-3 at pp. 11-13.
[98] R. Doc. 105-2 at pp. 12-13.
[99] *Id.*
[100] R. Doc. 105-2 at pp. 13.
[101] R. Doc. 97-1 at pp. 16-17.
[102] *Id.* at pp. 18-19.
[103] *Id.* at pp. 15-16.

13

intuitive and is well known in the aviation community, it is yet to be shown through quantitative studies that 'generativity' correlates with safety."[104] The Handbook is the only source Mr. Robinson cites in forming his opinion on Defendant's organizational culture.[105]

In response to the Court's inquiry into the cases in which Mr. Robinson has been qualified as an expert in court, with special emphasis on those involving organizational safety culture or human factor analysis, the Plaintiff identified six cases in which Mr. Robinson served as an expert and provided the reports for three of them. In the case from the United States District Court for the District of New Mexico, the case settled before trial and there was no finding by the Court that Mr. Robinson was qualified to offer an opinion on organizational safety culture.[106] In his report in the New Mexico case, which involved the crash of a turboprop aircraft, Mr. Robinson states "a human factors analysis is appropriate to contextualize the MC's actions and ejection decision-making after entry into the spiral dive."[107] His analysis centered on the "foreseeable human/pilot responses to unexpected and dynamic scenarios."[108] The human factor analysis in the New Mexico case, involving the decisions made by a "TOPGUN aviator" dealing with a diving airplane, has little to no relevance to the opinion offered in this case.

Plaintiff cites a case from the Supreme Court of the State of New York for New York County in which "Mr. Robinson was accepted by th[e] court as an expert witness to opine on the aspects of [the defendant's] corporate culture that led to" a helicopter accident.[109]

---

[104] R. Doc. 97-10 at pp. 5-6.
[105] R. Doc. 105-3 at pp. 11-13.
[106] *Martinez v. Emraer S.A.*, No. 21-570 (D.N.M.) (docket sheet).
[107] *Martinez*, R. Doc. 156-3, at p. 19 (D.N.M. Mar. 15, 2024).
[108] *Id*.
[109] R. Doc. 105 at p. 9 (citing *Cadigan v. Liberty Helicopters,* 2024 NY Slip Op. 31871(U) (Sup. Ct. N.Y. Cnty. May 31, 2024)).

There was no challenge to Mr. Robinson's qualifications.[110] In the New York case, Mr. Robinson did an extensive evaluation of the defendant's safety programs, staffing, and training and concluded "Liberty did not have a robust safety management structure in place."[111] In the case now before the Court, the Plaintiff provided no evidence that Mr. Robinson did an extensive analysis of the Defendant's operations, staffing, training, and safety structure. Instead, he provides as the basis for his opinion only the fact that Defendant did not do what he considered to be a proper "investigation of the accident" after it occurred.

Mr. Robinson also was hired as an expert witness in a case before the United States District Court for the Middle District of Tennessee. The case settled before trial.[112] There was no court decision that Mr. Robinson was qualified to testify as an expert.[113] Based on the report provided, Mr. Robinson did not offer an opinion on organizational safety culture.[114] Mr. Robinson served as an expert in a case before the United States District Court for the Southern District of Georgia. Plaintiff admits Mr. Robinson did not issue an opinion regarding organizational safety culture in that case.[115] As for the remaining two cases Plaintiff identifies in which Mr. Robinson was hired as an expert, Plaintiff admits these cases "involve human factors inquiries that are less relevant to Mr. Robinson's work in this case."[116] The cases in which Mr. Robinson has testified on organizational culture

---

[110] R. Doc. 105-2 at pp. 10-11.
[111] Expert Report of Matthew G. Robinson in *Cardigan v. Liberty Helicopters*, at p. 17 (Nov. 30, 2022) (on file with the Court).
[112] *Dwyer v. Sw. Airlines Co.*, No. 16-3262 (M.D. Tenn.) (docket sheet).
[113] *Id.*
[114] Expert Report of Matthew G. Robinson in *Dwyer v. Sw. Airlines Co.* (Mar. 24, 2019) (on file with the Court).
[115] Letter from Plaintiff's Counsel to the Court (June 17, 2023) (on file with the Court); *see Cocke v. United States*, No. 19-169 (S.D. Ga.).
[116] Letter from Plaintiff's Counsel to the Court (June 17, 2023) (on file with the Court).

15

are distinguishable from this case both in terms of the cultural issues before this Court and the evidence Mr. Robinson gathered and considered in forming his opinion.

The Court is not convinced Mr. Robinson's qualifications are sufficient for him to render an expert opinion on Defendant's organizational safety culture. His only specialized training in this field consists of, at a maximum, twenty-four hours over a three-day period.[117] Even if Mr. Robinson were qualified to offer an expert opinion on Defendant's organizational safety culture, his opinion in this case is unreliable. Mr. Robinson cites only to Defendant's failure to investigate Plaintiff's incident, Defendant's failure to change the gap between the aircraft door and the PBB, and the Handbook in support of his organizational safety culture opinion.[118] Mr. Robinson testified to this at his deposition:

> Q: You cite -- you note in your report at page 11, "The pathological organization typically chooses to handle anomalies by using suppression or encapsulation." And you note 6 on page 12 that, "Bureaucratic organizations tend to be good at routine or predictable problems. They do not actively create pathogens at the rate of pathological organizations, but they are not very good at spotting or fixing them." And you conclude that [Defendant] has a pathological and/or bureaucratic organizational structure; is that what you concluded?
>
> A: Yes.
>
> Q: What evidence do you have that [Defendant] chooses to handle anomalies by using suppression.
>
> A: By the very fact that I never received any type of incident, accident report from [Defendant] and subsequent investigation to prevent this again. That's a huge red flag. Somebody gets hurt on an airplane, you want to prevent it from happening again, so you go in and investigate. You do a report as required by ICAO, which they didn't do, which is another red flag. So they either shirk the responsibility to investigate or they just didn't do it at all, or they didn't know that that requirement existed. Either way, it's a huge

---

[117] R. Doc. 105-2 at pp. 12-13.
[118] *Id.* at pp. 17-22; R. Doc. 105-3 at pp. 11-13.

indicator of a pathological and/or bureaucratic organizational culture at [Defendant].[119]

Most importantly, during his deposition, Mr. Robinson could not cite specific evidence to support his opinion.[120] Mr. Robinson did not reference any information about Defendant's operations, its corporate culture, or its demonstrated patterns and practices. His opinion is based solely on his reading of the Handbook and the fact that Defendant did not do an investigation after Plaintiff's accident. This is not sufficient to provide a sound methodology for his opinions.[121] Furthermore, the probative value of Mr. Robinson's opinion that Defendant's corporate culture caused the Plaintiff's injuries is substantially outweighed by the danger of unfair prejudice against Defendant, confusing the issues, misleading the jury, and wasting time.[122] Accordingly, the Court precludes Mr. Robinson from offering opinions about Defendant's organizational safety culture under Rules 402, 403, and 702.

## **CONCLUSION**

**IT IS ORDERED** that Defendant's Motion to Limit or Exclude Testimony of Matthew G. Robinson is **GRANTED IN PART** and **DENIED IN PART**.[123]

**IT IS FURTHER ORDERED** that Mr. Robinson may not offer his first opinion that Defendant violated a "requirement" that there be no vertical gap between the aircraft door and the PBB. Mr. Robinson may testify based on his knowledge and experience as to

---

[119] R. Doc. 105-2 at pp. 17-18.
[120] R. Doc. 97-1 at pp. 17-18.
[121] *See Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. 13-0366, 2016 WL 8274173, at *8 (E.D. La. May 26, 2016) ("Because the [c]ourt cannot credit the reliability of the methodology used by Hughett—which, according to his deposition, appears to have consisted of, at most, calling up certain unnamed and unmemorable sources and recalling fragments of assessments concerning BEEOO's reputation that were read or heard in unknown places—the [c]ourt concludes that Hughett's testimony regarding BEEOO's reputation and culture is unreliable and will not assist a trier of fact.").
[122] *See VLSI Tech. LLC v. Intel Corp.*, No. 18-966, 2022 WL 2304112, at *1 (D. Del. June 27, 2022).
[123] R. Doc. 97. Mr. Robinson's testimony as to his second opinion was not challenged.

the types of and operations of PBBs, what the best practice is regarding the height of a PBB in relation to an aircraft door, whether Defendant's conduct complied with the best practice, and his measurement of the vertical gap (distance) between the aircraft door and the PBB on the flight.

**IT IS FURTHER ORDERED** Mr. Robinson may offer this third opinion on the cause of Plaintiff's accident.

**IT IS FURTHER ORDERED** that Mr. Robinson may not offer his fourth opinion that Defendant's failure to conduct a safety investigation and provide safety recommendations is clear evidence of a pathological and/or bureaucratic organizational culture.

**New Orleans, Louisiana, this 23rd day of June, 2025.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**