UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SUSAN HARDY,<br>   Plaintiff | CIVIL DOCKET |
| VERSUS | NO. 21-1591 |
| SCANDINAVIAN AIRLINES SYSTEM,<br>   Defendant | SECTION: "E" (2) |

## ORDER AND REASONS

Before the Court is Defendant Scandinavian Airlines System's ("Defendant") Motion for Summary Judgment.[1] Plaintiff Susan Hardy ("Plaintiff") filed an opposition, a Response to Defendant's Rule 56.1 Statement, and a supplemental opposition.[2] Defendant filed a response to Plaintiff's supplemental statement of material facts,[3] and a reply.[4]

## BACKGROUND

This action arises from an incident at the Oslo Gardermoen Airport on August 23, 2019.[5] Plaintiff departed on a United Airlines flight from New Orleans to New Jersey.[6] In New Jersey, Plaintiff transferred to a flight operated by Defendant, departing from New Jersey to Oslo, Norway.[7] Plaintiff alleges she fell and suffered injuries while disembarking the aircraft in Oslo, due to a five-to-six-inch gap between the bottom of the aircraft door and the passenger boarding bridge ("PBB").[8]

---

[1] R. Doc. 98.
[2] R. Doc. 104; R. Doc. 111; R. Doc. 113.
[3] R. Doc. 116
[4] R. Doc. 115.
[5] R. Doc. 25 at p. 5.
[6] *Id.* at p. 3.
[7] *Id.* at pp. 4-5.
[8] *Id.* at pp. 5-6.

1

On August 20, 2021, Plaintiff filed suit in this Court seeking to recover for her injuries.[9] Plaintiff filed an amended complaint on April 18, 2022.[10]

On May 20, 2025, Defendant filed the instant Motion for Summary Judgment.[11]

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] "An issue is material if its resolution could affect the outcome of the action."[13] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[14] All reasonable inferences are drawn in favor of the nonmoving party.[15] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[16]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[17] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving

---

[9] R. Doc. 1.
[10] R. Doc. 25.
[11] R. Doc. 98.
[12] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[13] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[14] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).
[15] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[16] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[17] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[18]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[19] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[20] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[21] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[22] If the

---

[18] *Celotex*, 477 U.S. at 322-24.
[19] *Id.* at 331-32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322-24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987) (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[20] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).
[21] *Celotex*, 477 U.S. at 332-33.
[22] *Id.*

movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[23] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[24]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[25]

**UNDISPUTED MATERIAL FACTS**

The following facts are undisputed. On August 23, 2019, Plaintiff traveled with her husband, Arthur Hardy ("Mr. Hardy"), on flight SK908 from Newark, New Jersey to Oslo, Norway.[26] Mr. Hardy exited the aircraft before Plaintiff without incident.[27] Mr. Hardy was "hurrying as he exited" the aircraft and was pulling two carry-on bags.[28] Plaintiff did not

---

[23] *Id.* at 332-33 & n.3.
[24] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.
[25] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (first citing *Celotex*, 477 U.S. at 324; then *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994); then quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).
[26] R. Doc. 98-17 at ¶ 1 (citing R. Doc. 25 at ¶¶ 4-5); R. Doc. 113-1 at ¶ 1.
[27] R. Doc. 98-17 at ¶¶ 17, 20 (citing R. Doc. 98-3 at pp. 4-6, 14); R. Doc. 113-1 at ¶¶ 17, 20.
[28] R. Doc. 98-17 at ¶¶ 18-19 (citing R. Doc. 98-3 at pp. 4-6); R. Doc. 113-1 at ¶¶ 18-19.

request assistance as she disembarked the aircraft.[29] Plaintiff fell and sustained serious injuries while disembarking the aircraft.[30]

## **DISPUTED MATERIAL FACTS**

Defendant argues it is undisputed that Bente Heggertveit ("Ms. Heggertveit"), a flight attendant on flight SK908, made all required announcements after Plaintiff's flight landed in Oslo, including an announcement instructing passengers to be aware of a "difference in level between the aircraft" door and the PBB.[31] At her May 15, 2025 deposition, Ms. Heggertveit attested that she "recalls" reading an announcement warning passengers about the difference in height level between the aircraft door and the PBB after Plaintiff's flight landed in Oslo because she reads this announcement "every time."[32] Plaintiff disputes that Ms. Heggertveit made all required announcements after the flight landed.[33] Mr. Hardy testified he did not hear a general safety announcement about a "difference in level between the aircraft door and the" PBB.[34] Mr. Hardy testified that "nobody told" him and Plaintiff to be "careful getting off on the boarding bridge because there's a step down."[35] Mr. Hardy further attested that "no one warned me or anybody in the plane as far as I know in terms of an announcement that there was a step down issue."[36] At her June 12, 2025 deposition, Kjersti Mowinckel ("Ms. Mowinckel"), a flight attendant aboard flight SK908, identified a document labeled "SAS_00008" as a version of the announcement Defendant's flight crews make after landing.[37] Ms. Mowinckel also

---

[29] R. Doc. 98-17 at ¶ 22 (citing R. Doc. 98-2 at pp. 17, 19-20); R. Doc. 113-1 at ¶ 22.
[30] R. Doc. 98-17 at ¶ 23 (first citing R. Doc. 25 at ¶ 27; R. Doc. 98-2 at pp. 21, 23; and then R. Doc. 98-11); R. Doc. 113-1 at ¶ 23; R. Doc. 116 at ¶ 8.
[31] R. Doc. 98-17 at ¶ 37 (citing R. Doc. 98-9 at p. 6).
[32] R. Doc. 98-9 at pp. 1, 5-6.
[33] R. Doc. 113-1 at ¶ 37 (citing R. Doc. 111-8 at p. 8).
[34] R. Doc. 111-8 at p. 8.
[35] *Id.*
[36] *Id.*
[37] R. Doc. 113 at p. 9.

5

testified that the version of the announcement found in SAS_00008 may contain different wording from those Defendant's flight crews make today. [38] What announcements were made by whom and when remains in dispute.

Defendant argues it is an undisputed fact that, at every gate at the Oslo Airport, "the PBB is assembled such that the floor of the PBB is approximately 15 centimeters below the aircraft door sill."[39] Defendant cites to the Federal Rules of Civil Procedure 30(b)(6) deposition of its representative at Record Document 98-4, transcript page 34, lines 6 through 7, to support this statement.[40] Defendant corrected this citation in its reply and explained that it[41] intended to cite its Rule 30(b)(6) representative's deposition testimony at Record Document 98-4, transcript page 37, line 22 through page 38, line 5 that the fifteen centimeter gap between the aircraft door and the PBB is "Norwegian standard and . . . a requirement from the [Oslo] airport."[42] Defendant's Rule 30(b)(6) representative further testified that the Thyssenkrupp manual "requires a 15 centimeter gap."[43] Harry Teague ("Mr. Teague"), Defendant's duty manager at the time of Plaintiff's fall, testified at his June 13, 2025 deposition that the Oslo Airport's "policy" is to set the PBB at 15 centimeters "or lower. Fifteen or less. So it's—as I said, it's not a problem to—if it's possible, it's not a problem to have the bridge . . . higher at some point. It all determines about, again, aircraft height, angle of floor bridge, and safety shoe."[44] Whether every gate of the Oslo airport the floor of the PBB is approximately 15 centimeters below the aircraft door sill remains in dispute.

---

[38] *Id.*
[39] R. Doc. 98-17 at ¶ 6 (citing R. Doc. 98-4 at p. 3).
[40] *Id.* (citing R. Doc. 98-4 at p. 3).
[41] R. Doc. 115 at p. 19.
[42] *Id.* (citing R. Doc. 98-4 at pp. 4-5).
[43] *Id.* (citing R. Doc. 98-4 at p. 9).
[44] R. Doc. 113-4 at p. 11.

The Plaintiff has alleged that the Defendant's negligence caused Plaintiff's accident.[45] Defendant states it is an undisputed fact that Plaintiff does not know the cause of her fall.[46] Plaintiff disputes this.[47] In her deposition, Plaintiff testified that she does not recall whether she was "looking at [Mr. Hardy]" or which foot she was "stepping on" when she exited the aircraft and fell,[48] but that she "assume[s] . . . the location of the passenger boarding bridge" caused her fall because "it was not a normal step."[49] In his deposition, Mr. Hardy testified that "[i]t was pretty obvious that" the vertical distance between the aircraft door and the PBB caused Plaintiff's fall.[50] Mr. Hardy testified that he does not know whether someone cut Plaintiff off, whether someone pushed Plaintiff, or whether Plaintiff tripped on something.[51] Plaintiff's expert Matthew G. Robinson opined that Defendant's "failure to warn passengers of the aircraft floor to PBB gap led to Plaintiff's injury."[52]

The United States Court of Appeals for the Fifth Circuit has stated that "the use of summary judgment is rarely appropriate in negligence" cases.[53]

> "Because of the peculiarly elusive nature of the term 'negligence' and the necessity that the trier of facts pass upon the reasonableness of the conduct in all the circumstances in determining whether it constitutes negligence, it is the rare personal injury case which can be disposed of by summary judgment, even where the historical facts are concededly undisputed."[54]

---

[45] R. Doc. 25 at ¶ 33; R. Doc. 113 at pp. 14-19.
[46] R. Doc. 98-17 at ¶ 25 (citing R. Doc. 98-2 at pp. 24-25).
[47] R. Doc. 113-1 at ¶ 25 (citing R. Doc. 111-1 at pp. 13-14).
[48] R. Doc. 98-2 at pp. 24-25.
[49] *Id.* at p. 28.
[50] R. Doc. 98-3 at p. 10.
[51] *Id.* at p. 11.
[52] R. Doc. 105-3 at pp. 11, 13.
[53] *Davidson v. Stanadyne, Inc.*, 718 F.2d 1334, 1338 (5th Cir. 1983).
[54] *Id.* (quoting *Gauk v. Meleski*, 346 F.2d 433, 437 (5th Cir. 1965)).

7

The Court is mindful of the Fifth Circuit's admonition that "the use of summary judgment is rarely appropriate in negligence" cases[55] because the trier of fact must determine the reasonableness of conduct and whether it constitutes negligence, even when the facts are undisputed. The jury must determine whether the Defendant was negligent.

The disputed material facts identified above, as well as others, together with the allegations that the Defendant was negligent, make summary judgment inappropriate. Resolution of all disputed material facts and the reasonableness of the Defendant's actions must be left for the finder of fact after a trial on the merits. Accordingly;

## CONCLUSION

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**.[56]

**New Orleans, Louisiana, this 25th day of June, 2025.**

                        **SUSIE MORGAN**
                        **UNITED STATES DISTRICT JUDGE**

---

[55] *Davidson*, 718 F.2d at 1338.
[56] R. Doc. 98.